**UNITED STATES of America,**
**Plaintiff,**

v.

**Eric L. MACK, Defendant.**

**Crim. Action No. 00–00248–01–CR–W–1.**

United States District Court,
W.D. Missouri,
Western Division.

Sept. 14, 2000.

7. *See Nixon v. Shrink,* 528 U.S. 377, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000).

8. The courts ruling here is not affected by the plaintiff's requests to engage in political activity outside the workplace. As was so artfully stated in *Mitchell,* "The influence of political activity by government employees, if evil in its effects on the service, the employees or people dealing with them, is hardly less so because that activity takes place after hours." *United Public Workers of America v. Mitchell,* 330 U.S. at 95, 67 S.Ct. 556.

Mr. Abram McGull, II, Assistant United States Attorney, Kansas City, MO, for plaintiff.

Mr. Bruce Simon, Kansas City, MO, for defendant.

## ORDER

WHIPPLE, District Judge.

Magistrate Robert E. Larsen's Report and Recommendation to Deny Defendant's Motion to Suppress Evidence, dated August 23, 2000, is pending before the Court. Defendant Eric L. Mack has filed exceptions and objections. The United States did not file a reply.

The Court, after independent review of the record and applicable law, adopts the Magistrate's findings of fact and conclusions of law. Therefore, the Court finds that the evidence shall not be dismissed.

Accordingly, it is hereby

ORDERED that the Magistrate's proposed findings of fact and conclusions of law are adopted and incorporated herein by reference. It is further

ORDERED that the Magistrate's Report and Recommendation, filed August 23, 2000, shall be attached to and made part of this Order. It is further

ORDERED that Defendant Eric L. Mack's Motion to Suppress Evidence is DENIED.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

LARSEN, United States Magistrate Judge.

Before the court is defendant's motion to suppress evidence [1] on the ground that the

no-knock provision in the search warrant is not supported by reasonable suspicion that knocking and announcing would be dangerous, futile, or destructive to the purpose of the investigation. I find that (1) the no-knock provision in the search warrant was supported by reasonable suspicion that knocking and announcing would be dangerous, futile, or destructive to the purpose of the investigation; and (2) even if the warrant had not provided for a no-knock entry, police were justified in executing the warrant without first knocking and announcing their purpose due to the exigent circumstances known at the time. Therefore, defendant's motion should be denied.

## I. BACKGROUND

On July 12, 2000, a four-count superseding indictment was returned charging defendant with possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); two counts of distribution of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); and one count of possession of firearms in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). On June 30, 2000, defendant filed a motion to suppress evidence on the ground that the no-knock provision in the search warrant was not supported by reasonable suspicion (document number 18). On July 17, 2000, the government filed a response in opposition (document number 23) arguing that the no-knock entry was justified because (1) less than 24 hours earlier, a confidential informant had observed defendant with an assault weapon slung on his body, (2) the confidential informant observed another assault-type weapon on defendant's couch, (3) throughout the day of the execution of the search warrant, police observed numerous people entering and leaving the residence and knew there were at least six people in the residence and additional people lingering outside the residence, and (4) officers had conducted a computer check and learned that individuals who frequented the residence had convictions for aggravated assault and possession of a weapon.

A hearing was held before me on July 20, 2000. The government was represented by Assistant United States Attorney Abram McGull. The defendant was present represented by Bruce Simon. The government called Detective Gary Gibson and Officer Eric Benson, both of the Kansas City, Missouri, Police Department, as witnesses. In addition, the government offered a copy of the return on the search warrant as Plaintiff's Exhibit 1 and a copy of the search warrant as Plaintiff's Exhibit 2. Defendant called Detective Kevin Kilkenny of the Kansas City, Missouri, Police Department as a witness and offered Defendant's Exhibit 1, the affidavit in support of the search warrant, which was admitted.

## II. FINDINGS OF FACT

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact:

1. On May 25, 2000, members of the Kansas City, Missouri, Police Department purchased cocaine from defendant with the help of a confidential informant (Tr. at 7–8, 45). On the basis of that purchase, officers applied for a search warrant on May 31, 2000, to search defendant's residence at 3221 Highland (Tr. at 9, 10, 44). The officers decided to seek a no-knock search warrant because of dangerous circumstances (Tr. at 33). Detective Kevin Kilkenny was the affiant but had no previous involvement with the investigation (Tr. at 50–51). Detective Cathy, who was involved in the drug buys, assisted Detective Kilkenny in generating the affidavit and search warrant (Tr. at 60).

2. At the time the warrant was sought, police had DRAGNET information that the residence was an illegal drug house

---

**1.** The motion seeks to suppress "physical evidence and/or statements". However, during the evidentiary hearing, it was agreed that no statements were given (Tr. at 80–81).

(Tr. at 9). DRAGNET is a computer system listing reports by civilians or police officers who call to report drug activity (Tr. at 24, 52). In addition, they had computer information that the people who resided at that residence in the past had convictions for weapons violations and for assault (Tr. at 9, 25, 53). In cases where it is determined that there is no danger to the tactical team members or to citizens, the no-knock warrant is not sought (Tr. at 37). However, in this case because of the DRAGNET information, the no-knock provision was requested. The warrant was issued on May 31, 2000, authorizing the officers to dispense with the knock-and-announce requirement (Tr. at 10).

3. On June 7, 2000, one week after the search warrant was issued, another cocaine purchase was made again utilizing the confidential informant (Tr. at 10, 12, 44, 45). The confidential informant went to 3221 Highland, and defendant answered the door wearing an assault-type weapon attached to his torso (Tr. at 10–11, 12). Once inside the door, the informant observed another assault weapon on the couch (Tr. at 11). Defendant and the informant left 3221 Highland and traveled to another residence in the 5700 block of Mersington where the informant purchased crack cocaine from defendant (Tr. at 11).

4. On June 8, 2000, after the most recent undercover purchase of crack cocaine from defendant, officers gathered for a briefing before executing the search warrant which had been issued on May 31, 2000 (Tr. at 12, 18). This warrant was determined to be a "high risk" search warrant because of the weapons that had been observed and the computer information about the weapons violations and assault convictions of the residents (Tr. at 12–13, 64, 67). Detective Gary Gibson told the executing officers about defendant having answered the door with an assault weapon

around his torso and he told them about the assault weapon observed on defendant's couch (Tr. at 13). Officer Benson, the point man, was concerned about these weapons because the bullets will go through the officers' bullet-proof vests (Tr. at 77). Detective Gibson also relayed information that had been gathered through surveillance (Tr. at 13). Through surveillance, which began at about 3:00 p.m., two hours before the warrant was executed, officers had seen numerous people coming and going through the front door of the house (Tr. at 13, 23). The house was in an older neighborhood where the homes were very close together and very close to the street and there was almost-constant foot traffic down the sidewalk in front of the house (Tr. at 14). All of this information led Detective Gibson to conclude that it was a "high risk" warrant because of the potential danger to the police officers and to innocent bystanders (Tr. at 14, 37).

5. As the executing officers pulled up in front of the house,[2] an individual was observed walking from the side of the house to the front yard (Tr. at 14, 64–65). That person was arrested, then Officer Eric Benson approached the front of the house with the tactical team members (Tr. at 14–15, 65). The front door was open, but the screen door was closed (Tr. at 78). Officer Benson shouted, "Police, Search Warrant" and then opened the screen door (Tr. at 65). He entered the residence and again announced "Police, Search Warrant" (Tr. at 65, 66). Eight people were found inside the residence, and three of those were arrested (Tr. at 40, 65, 66). The executing officers recovered seven firearms, two of which were assault-type rifles, from the residence during the search (Tr. at 41, 79).

6. Detective Gibson, who has been involved with hundreds of search warrants, has seen warrants issued during the last year and a half that did not have a no-

---

**2.** Although the warrant was obtained on May 31, it was not executed until June 8 (Tr. at 45, 46). During the interim, officers attempted to

identify the drug sellers so that arrests could be made during execution of the warrant (Tr. at 44–45).

knock provision (Tr. at 16, 23, 35). Officer Benson, who has worked with the tactical team in the narcotics unit for three years, has seen search warrants without the no-knock provision[3] (Tr. at 69, 71, 73). Officer Benson has been involved in the execution of about 100 search warrants during the past year (Tr. at 73).

7. When a warrant is being prepared, the computer provides a form with the no-knock language (Tr. at 43, 56). If the no-knock provision will not be sought, that language is deleted before the form is printed out (Tr. at 43). If a no-knock warrant is sought, the affidavit must contain information which would justify the no-knock provision (Tr. at 44).

### III. SUFFICIENCY OF THE SEARCH WARRANT

■ The sufficiency of a search warrant is in the first instance determined on the basis of the information before the issuing judge. *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir.1986). On a motion to suppress, the reviewing court should not make a de novo determination of probable cause; rather, the decision to issue the warrant is to be upheld if supported by a substantial basis in the record. *Massachusetts v. Upton*, 466 U.S. 727, 728, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984); *Illinois v. Gates*, 462 U.S. 213, 238–239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). An issuing judge's determination of probable cause is entitled to great deference. *United States v. Arenal*, 768 F.2d 263, 266 (8th Cir.1985); *United States v. Ross*, 713 F.2d 389, 393 (8th Cir.1983).

■ Probable cause to issue a search warrant exists when an affidavit sets forth sufficient facts to justify a prudent person in the belief that there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. at 238, 103 S.Ct. 2317; *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *United States v. Reivich*, 793 F.2d at 959. This case, however, does not involve the typical determination of whether the affidavit reflected probable cause that "contraband or evidence of a crime will be found in a particular place." In fact, defendant does not argue that the affidavit lacks probable cause that "contraband or evidence of a crime will be found in a particular place." Rather, the issue here is whether the no-knock provision of the search warrant was adequately supported by the affidavit.

■ The fourth amendment incorporates the common-law requirement that officers entering a dwelling must "knock on the door and announce their identity and purpose before attempting forcible entry." *Richards v. Wisconsin*, 520 U.S. 385, 387, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). However, no rigid rule exists requiring announcement in all circumstances. *United States v. Ramirez*, 523 U.S. 65, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998). In order to justify a no-knock entry, the police must have a "reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Id.*

■ The normal rule that federal standards control the admissibility of evidence in a federal prosecution (even though the evidence was seized by state officials and would not be admissible in state court) does not apply in the case of

---

**3.** Detective Kilkenny testified that the only way he knows how to obtain a warrant is with the no-knock language because it is "like a template" in the computer (Tr. at 56). However, Detective Kilkenny also testified that he had been with the drug enforcement unit only seven months (Tr. at 49) and that the warrant in this case was the only one he had obtained since working for the drug unit (Tr. at 54). In addition, Detective Kilkenny—who had no involvement in this case before the warrant was sought—was assisted by Detective Cathy in preparing the affidavit (Tr. at 60). Detective Cathy was actually involved in the investigation (Tr. at 60).

state-issued no-knock search warrants executed by state officers. *United States v. Moore*, 956 F.2d 843, 846–47 (8th Cir. 1992). It is true that if state officers seize evidence in violation of the fourth amendment and turn that evidence over to federal officers, the evidence must be excluded in a resulting federal prosecution. *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). The Supreme Court reaffirmed this principle in *Preston v. United States*, 376 U.S. 364, 366, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), wherein the Court stated, "The question whether evidence obtained by state officers and used against a defendant in a federal trial was obtained by unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers."

However, the Supreme Court has only considered this question in the context of evidence seized by state officials in violation of the fourth amendment. *United States v. Moore*, 956 F.2d 843, 846–47 (8th Cir.1992) (and cases cited therein). The Eighth Circuit has distinguished those cases from cases where there has been no violation of the fourth amendment.

> [W]e do not read these decisions to mean that federal law governs all aspects of the admissibility in federal prosecutions of evidence independently acquired by state officers. Rather, they are based upon the proposition that, "States are not free to impose on Federal courts requirements more strict than those of the Federal laws or Constitution." Assuming, then, no violation of the Fourth Amendment ..., we come to the narrow question at issue here—when state officers, acting totally without federal involvement, seize evidence that is later offered in a federal prosecution, must that evidence be excluded if the no-knock entry violated § 3109,[4] a federal statute that is more restrictive

than the Fourth Amendment? We agree with the majority of federal courts that have declined to apply § 3109 in this situation.

*Id.* at 847 (citations and footnotes omitted).

In support of that determination, the Eighth Circuit reasoned as follows:

> [T]he purpose of the exclusionary rule is to deter unlawful police conduct. This is not a case in which the state officers intentionally violated a federal statute that governed their conduct. Here, § 3109 was irrelevant to Officer Terrell and the County Court judge at the time the warrant issued; they were acting under a state search warrant statute to investigate possible violations of state law. The high social cost of the exclusionary rule—"The criminal is to go free because the constable has blundered," as Justice Carodozo succinctly put it—requires that it have no application to situations where the constable has not blundered. "[A]ny rule of evidence that denies the jury access to clearly probative and reliable evidence ... must be carefully limited to the circumstances in which it will pay its way by deterring official lawlessness."

*Id.* at 847–848 (citations and footnotes omitted).

The proper standard, then, is whether the state officials complied with Missouri law and the fourth amendment, or, under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), had an objectively reasonable basis to believe they were complying with Missouri law and the fourth amendment in applying for and issuing the no-knock warrant. *Id.* When issuing a search warrant with a no-knock provision, the judge must determine at the time the warrant is issued that exigent circumstances exist. *Richards v. Wisconsin*, 520 U.S. at 396, n. 7, 117 S.Ct.

---

**4.** 18 U.S.C. § 3109 states that, "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

1416 ("The practice of allowing magistrates to issue no-knock warrants seems entirely reasonable when sufficient cause to do so can be demonstrated ahead of time.") *See also United States v. Spry,* 190 F.3d 829, 833 (7th Cir.1999), *cert. denied,* 528 U.S. 1130, 120 S.Ct. 967, 145 L.Ed.2d 838 (2000). The issuance of a no-knock search warrant potentially insulates the police against a subsequent finding that exigent circumstances, as defined by *Richards,* did not exist. *United States v. Tisdale,* 195 F.3d 70, 72 (2nd Cir.1999).

■ There is no statute in Missouri expressly authorizing no-knock search warrants. However, the court of appeals in Missouri, citing *Richards v. Wisconsin,* 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), has clearly outlined the standard for no-knock entries:

> In order to justify a "no knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would allow the destruction of evidence. This standard, as opposed to a probable cause requirement, strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries. This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged.

*State v. Ricketts,* 981 S.W.2d 657, 660 (Mo. Ct.App.1998).

The *Ricketts* court acknowledged that there is no blanket exception to the knock-and-announce requirement for drug cases, again citing *Richards v. Wisconsin. State v. Ricketts,* 981 S.W.2d at 662. The court, in holding that the requisite exigent circumstances did not exist in that case, stated that a search to recover illegal drugs "might be a reasonable justification for forced entry if the police had a specific reason to believe that [the defendant] was violent or had firearms on the premises, or that [the defendant] had prior convictions for violent or gun-related charges." *Id.* at 662.

■ In this case, the affidavit stated that the address responded through DRAGNET as a suspected drug house, that defendant had sold cocaine and marijuana from the house, and that parties residing at the residence had convictions for aggravated assault and possession of a weapon. D.Ex. 1. Under Missouri law, these circumstances provided the requisite exigent circumstances. In addition, it is well-settled that cocaine is a type of drug that is easily destroyed. *United States v. Kenyon,* 7 F.3d 783, 784 (8th Cir.1993). *See also United States v. Brown,* 52 F.3d 415, 421 (2nd Cir.1995), *cert. denied,* 516 U.S. 1068, 116 S.Ct. 754, 133 L.Ed.2d 701 (1996).

The government argues in its response that, in addition to the facts listed above, the police also knew that (1) defendant had answered the door with an assault weapon slung on his body and had another assault weapon on his sofa, and (2) during the day of June 8, 2000, police observed numerous individuals entering and leaving the residence and that just prior to executing the warrant, police knew that at least six people were inside the residence which posed a danger to the officers, nearby citizens, and the individuals themselves. However, those facts were not known at the time the search warrant was issued and cannot therefore form the basis of a valid search warrant. *United States v. Lucht,* 18 F.3d 541, 551 (8th Cir.1994).

■ Based on the above, I find that the no-knock provision in the search warrant was supported by reasonable suspicion that knocking and announcing would be dangerous or futile, and that it would inhibit the effective investigation of the crime by allowing the destruction of evidence.

Even if the warrant had not had a no-knock provision, I find that the officers' execution of that warrant without first knocking and announcing was justified by exigent circumstances. As discussed above, the police may dispense with the knock-and-announce requirement when they have a reasonable suspicion that knocking and announcing would be dangerous, futile, or destructive to the purpose of the investigation. *United States v. Ramirez*, 523 U.S. 65, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998). Clearly that was the case here.

Not only did the officers have the information provided in the affidavit, i.e., that the address responded through DRAGNET as a suspected drug house, that defendant had sold cocaine and marijuana from the house, and that parties residing at the residence had convictions for aggravated assault and possession of a weapon, the police also knew the following: the day before the warrant was executed, defendant answered the door with an assault weapon slung on his body and had another assault weapon on his sofa, and (2) prior to execution of the warrant, surveillance officers observed numerous individuals entering and leaving the residence, six of whom remained in the residence at the time the warrant was executed. Because of the danger to the officers, nearby citizens, and the individuals in the residence, and because of the danger that evidence would be destroyed, the police were justified in executing the warrant without first knocking and announcing their purpose. As a result, defendant's motion to suppress should be denied.

### IV. CONCLUSION

I find that (1) the no-knock provision in the search warrant was supported by reasonable suspicion that knocking and announcing would be dangerous, futile, or destructive to the purpose of the investigation; and (2) even if the warrant had not provided for a no-knock entry, police were justified in executing the warrant without

first knocking and announcing their purpose due to the exigent circumstances known at the time. Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and applicable law, enter an order denying defendant's motion to suppress evidence.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of receipt of a copy of this report and recommendation to file and serve specific objections unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

Aug. 23, 2000.