# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2279

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Deandre J. Scroggins, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  November 19, 2003

Filed:  March 24, 2004

_____

Before LOKEN, Chief Judge, McMILLIAN and BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

This appeal involves a no-knock warrant, a joint state-federal task force conducting a no-knock search pursuant to that warrant, and the district court's decision to suppress the fruits of that search. While we express no opinion about the constitutionality of the search, we reverse because the law-enforcement agents relied in good faith upon the warrant's authorization to enter without knocking.

## I.    BACKGROUND

Detective James Svoboda was a Kansas City, Missouri, police officer who served on the FBI Criminal Enterprise Narcotics Task Force, which was a joint anti-drug task force comprised of both federal and state law-enforcement agents. In late 2001, as part of this task force, Svoboda began investigating a large-scale drug-trafficking ring. During this inquiry, several sources told Svoboda that Deandre Scroggins was a drug trafficker who dealt in kilo amounts of cocaine.

Svoboda and the task force began investigating Scroggins. A records check revealed that Scroggins's criminal history included a past arrest for narcotics and weapons violations. While observing the residence, agents randomly checked visitors' license plates and determined that known drug dealers repeatedly visited. Another detective, acting as an undercover garbage collector, picked up trash bags from outside Scroggins's residence. The trash bags contained marijuana residue, plastic baggies with the corners cut off, and a live round of ammunition from an assault rifle (likely an AK-47).

Based on this information, Svoboda prepared an affidavit and application for a warrant to search the residence. A Missouri state judge determined that probable cause existed and that "entry into the residence may be made without knocking [and announcing] their purpose due to safety concerns enumerated in the affidavit."

Before executing the warrant, the sergeant and point man on the tactical-response team read the affidavit accompanying the warrant. On June 4, 2002, officers executed the warrant, and according to its terms, did not knock and announce their presence. During the search, the agents seized a large amount of crack cocaine, a small amount of marijuana, a loaded AK-47 assault rifle, a spare magazine and ammunition for the assault rifle, a .357-caliber pistol, drug paraphernalia, and about $4,500 in cash.

-2-

A federal grand jury indicted Scroggins on drug and weapons charges. Scroggins moved to suppress the evidence on several grounds, including lack of probable cause. The district court denied that motion. Scroggins then filed a second motion to suppress, asserting that the search was invalid because the circumstances did not justify a no-knock entry. The magistrate judge agreed with Scroggins and recommended that the district court exclude all evidence seized during the search. After the district court adopted the magistrate judge's report and recommendation, the government filed this interlocutory appeal. We have jurisdiction under 18 U.S.C. § 3731, and we reverse.

## II.   DISCUSSION

When reviewing the district court's ruling on a motion to suppress, we review its fact-finding for clear error and its ultimate application of the law to the facts de novo. United States v. Tyler, 238 F.3d 1036, 1038 (8th Cir. 2001).

The government argues two grounds for reversal. First, it argues that the search was proper because, at the time they entered, the agents had a reasonable suspicion that a no-knock entry was necessary to ensure officer safety. Alternatively, under United States v. Leon, 468 U.S. 897 (1984), it argues that, even if the search was improper, the trial court should have denied the motion to suppress because the searching agents relied in good faith upon the warrant's no-knock authorization. We address only the Leon issue.

To decide this appeal, we must answer three questions.   First, what law governs this appeal?   Second, under that law, when can officers search without knocking and announcing their presence?  And third, assuming that the officers cannot meet that standard, does the Leon good-faith exception save the evidence from the exclusionary rule?  We must answer all of these questions because under Leon, we must know what standard applies before we can evaluate the officers' good faith.

-3-

## A. What law applies?

When law-enforcement officers have searched a residence without knocking and announcing their presence, and when federal agents played some role in that search, we have typically begun our inquiry by asking what law applies. Generally, our inquiry has focused on whether the search implicates the federal "no-knock statute," 18 U.S.C. § 3109. While section 3109 does not apply to searches conducted entirely by state officers pursuant to a state warrant, section 3109 does apply when "'federal officers are a significant part of a search.'" United States v. Tavares, 223 F.3d 911, 914 (8th Cir. 2000) (quoting United States v. Murphy, 69 F.3d 237, 242 (8th Cir. 1995)). Recent Supreme Court precedent convinces us that this significant-part-of-the-search question is now irrelevant in most situations.

Before 1995, determining whether section 3109 applied was often important to determine whether *any* law protected residents from no-knock searches. If section 3109 did not apply, and if the state in which the officers searched did not regulate no-knock searches, some courts held that no law required the officers to knock and announce their presence. See Wilson v. Arkansas, 878 S.W.2d 755 (Ark. 1994). But in Wilson, the Supreme Court rejected this idea and held that the "common-law knock and announce principle forms a part of the Fourth Amendment reasonableness inquiry." Wilson v. Arkansas, 514 U.S. 929, 930 (1995). So after Wilson, even if a state chooses not to regulate in the area, it is clear that the Fourth Amendment requires an inquiry into the reasonableness of a no-knock search even if there is no federal involvement triggering section 3109.

Next, after Wilson, it was unclear whether section 3109's scope was broader than the Fourth Amendment's. Wilson taught that a no-knock search always implicated the Fourth Amendment's reasonableness requirement. But if section 3109 provided a broader protection against no-knock searches, courts still had to ask whether the search triggered section 3109 to determine the appropriate standard. E.g.,

United States v. Mack, 117 F. Supp. 2d 935, 941 (W.D. Mo. 2000) ("[M]ust that evidence be excluded if the no-knock entry violated § 3109, a federal statute that is more restrictive than the Fourth Amendment?") (quotation omitted). This inquiry is no longer material because the Court soon clarified that both section 3109 and the Fourth Amendment codified the same common-law knock-and-announce principle, and that both are subject to the same exceptions. United States v. Ramirez, 523 U.S. 65, 72-73 (1998); see United States v. Banks, 124 S. Ct. 521, 528-29 (2003) ("Ramirez held that the result should be the same under the Fourth Amendment and § 3109.").

After these cases, we know that a defendant need not show "federal involvement" to invoke protections against unreasonable no-knock searches. See Wilson, 514 U.S. at 933 . And we know that showing "federal involvement" does not entitle a defendant to greater protections than does the Fourth Amendment. See Ramirez, 523 U.S. at 72-73; see also Banks, 124 S. Ct. at 528-29. The only situation left is when state law provides broader knock-and-announce protection than does section 3109 and the Constitution. That situation raises different questions, is not before us, and we leave its discussion for another day.

Defendant argued below, and the district court agreed, that section 3109 applied because the federal involvement was significant. Because section 3109 and the Fourth Amendment are coextensive, this inquiry is immaterial, and we will evaluate Scroggins's argument as a claim under the Fourth Amendment.

## B.    The Fourth Amendment's Knock-And-Announce Rule

Although we do not decide whether this search satisfied the Fourth Amendment, we still must examine the standards governing no-knock searches and no-knock warrants before we can evaluate whether the searching officers acted in "good faith" when they relied upon the warrant's no-knock authorization.

### 1. No-knock Searches

The Fourth Amendment to the Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The reasonableness of a search may depend, in part, on whether law-enforcement officers knocked and announced their presence before entering:

> [W]e have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure. . . . [W]e hold that in some circumstances an officer's unannounced entry into a home might be unreasonable under the Fourth Amendment.

Wilson, 514 U.S. at 934.

The Fourth Amendment does not forbid no-knock searches. Rather, it requires that searching officers justify dispensing with the knock-and-announce requirement. See Richards v. Wisconsin, 520 U.S. 385, 391 (1997). Police officers can justify a no-knock entry if they show they had a reasonable suspicion that knocking and announcing their presence under the particular circumstances would threaten officer safety, be futile, or inhibit the investigation of the crime. Id. at 394. This showing is "not high," but is one that the police must still make when the defendant challenges the reasonableness of a no-knock search. Id. at 394-95.

Although drug investigations frequently pose unique threats to officer safety and the effective preservation of evidence, the Fourth Amendment forbids a blanket exception to the knock-and-announce requirement in drug cases. Id. at 394; United States v. Moore, 956 F.2d 843, 850 (8th Cir. 1992). The government must still meet its not-high burden of showing that it had a reasonable suspicion that knocking and

announcing would be "'dangerous or futile, or . . . would inhibit the effective investigation of the crime.'" Banks, 124 S. Ct. at 525 (quoting Richards, 520 U.S. at 394) (alteration in original).

The reasonable suspicion standard, of course, is lower than the probable cause standard. When determining whether reasonable suspicion exists, courts must evaluate the totality of the circumstances to determine whether the police officers had a particularized and objective basis for their conclusion. United States v. Arvizu, 534 U.S. 266, 273 (2002). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." Id.

### 2. No-Knock Warrants

Knock-and-announce challenges arise in several situations, depending on when the exigencies arise, and when the searching officers first ask a court to approve of their no-knock entry.

The first situation involves a regular (not a no-knock) warrant. When the police have obtained a regular warrant, they have convinced a judge that probable cause exists, but have not obtained pre-search approval for a no-knock entry. If the police execute the warrant without knocking, at the hearing on the motion to suppress, the police must show that their conduct met the standards the Court detailed in Richards, Wilson, and progeny, and there will not be a no-knock warrant provision upon which the officers can rely in good faith under Leon.

The second situation (and the one present in this case) involves a no-knock warrant. When the police obtain a no-knock warrant, they have anticipated exigent circumstances before searching, and have asked for pre-search judicial approval to enter without knocking. Of course, exigencies often do not appear before the officers

arrive at the doorstep. But when the officers know, before searching, of circumstances that they believe justify a no-knock entry, it seems more consistent with the Fourth Amendment to ask a neutral judge for approval before intruding upon a citizen's privacy. For this reason, "the practice of allowing magistrates to issue no-knock warrants seems entirely reasonable when sufficient cause to do so can be demonstrated ahead of time." Richards, 520 U.S. at 396 n.7.[1]

The showing the police must make to obtain a no-knock warrant is the same showing they must make to justify their own decision to dispense with the knock-and-announce requirement. Only the timing differs. "When a warrant applicant gives reasonable grounds to expect futility or to suspect that one or another such exigency already exists or will arise instantly upon knocking, a magistrate judge is acting within the Constitution to authorize a 'no-knock' entry." Banks, 124 S. Ct. at 525. Although the standards are the same regardless of whether the police visit a judge before or after they search, if they do so beforehand, and the judge is wrong, the police can rely upon the Leon good-faith exception. United States v. Tisdale, 195 F.3d 70, 72 (2d Cir. 1999) ("[T]he issuance of a warrant with a no-knock provision potentially insulates the police against a subsequent finding that exigent circumstances, as defined by Richards, did not exist.").

---

[1]Both this court and the Supreme Court have noted that state laws differ regarding a judicial officer's authority to issue a no-knock warrant. Banks, 124 S. Ct. at 525 n.2; Richards, 520 U.S. at 396 n.7; see United States v. Baker, 16 F.3d 854, 856 n.1 (8th Cir. 1994). Although Missouri law does not expressly provide authority for judicial officers to issue no-knock warrants, the existing caselaw suggests that they do posses that authority. See Mack, 117 F. Supp. 2d at 942; see also United States v. Workcuff, 250 F. Supp. 2d 1160, 1177-78 (W.D. Mo. 2003). Scroggins does not expressly challenge the Missouri judge's authority to issue a no-knock warrant. Regardless, the question is close enough that the officers could invoke Leon to justify their reliance upon the judge's authority to issue the no-knock warrant.

Here, the Missouri judge issued a no-knock warrant based upon Svoboda's application and affidavit. The judge concluded that "entry into the residence may be made without knocking [and announcing] the presence of law enforcement and their purpose due to safety concerns enumerated" in Svoboda's affidavit. Svoboda's affidavit alleged that Scroggins sold drugs from his residence, that he was involved in a large-scale drug-trafficking organization, that informants observed kilo amounts of cocaine in the residence, that Scroggins had a past arrest for narcotics and weapons violations, that drug traffickers repeatedly visited the residence, that Svoboda was familiar with the drug trade and the tendency of drug traffickers to keep firearms to protect themselves, and that a trash search had uncovered drug residue, possible paraphernalia, and a live round from an assault rifle.

Under Richards and its progeny, this case would present a close call *if* the question were whether the judge correctly determined that Svoboda's application and affidavit alleged sufficient exigent circumstances to justify dispensing with the knock-and-announce requirement. Compare Tyler, 238 F.3d at 1040 (holding affidavit sufficient when police "attested that Mr. Tyler possessed weapons and was likely to destroy evidence of his drug crimes") with Tavares, 223 F.3d at 917 ("The only statement [the officer] could offer as to the dangerousness of the search was his bare conclusion in the warrant application that unidentified suspects might be involved in violent crimes."). But that is not the question we consider. Instead, we ask whether, assuming the judge resolved this close call incorrectly in issuing the warrant, the police relied in good faith upon the warrant's no-knock authorization. Thus, we turn to a discussion of Leon.

## C.   The Leon Good-Faith Exception

Assuming that the no-knock search violated the Fourth Amendment, we turn to the separate question of whether the exclusionary rule applies to the seized evidence. See Arizona v. Evans, 514 U.S. 1, 11 (1995). The exclusionary rule is a

-9-

judicially created remedy designed to deter future Fourth Amendment violations. <u>Id.</u>; <u>Leon</u>, 468 U.S. at 906. "As with any remedial device, the rule's application has been restricted to those instances where its remedial objectives are thought most efficaciously served." <u>Evans</u>, 514 U.S. at 11. If applying the rule would not appreciably deter future violations, the rule does not apply. <u>Id.</u>

In <u>Leon</u>, the Court developed the "good-faith" exception to the exclusionary rule. The Court determined whether the exclusionary rule should apply when police officers search in objectively reasonable reliance on a search warrant, issued by a neutral judicial officer, that is later determined invalid. <u>Evans</u>, 514 U.S. at 11 (discussing <u>Leon</u>, 468 U.S. at 905). First, the Court determined that the rule applied to deter police–not judicial–misconduct. <u>Id.</u> Then the Court examined "whether application of the exclusionary rule could be expected to alter the behavior of the law enforcement officers" who relied upon a warrant issued by a judicial officer. <u>Id.</u>

The Court concluded that suppressing evidence would not serve a sufficiently deterring function when the police officers acted in "good faith" reliance upon a judge's warrant. An officer's good faith is judged by whether the officer's reliance was "objectively reasonable." <u>Leon</u>, 468 U.S. at 919-20. Stated another way, the inquiry is whether a "'reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" <u>Malley v. Briggs</u>, 475 U.S. 335, 345 (1986) (quoting <u>Leon</u>, 468 U.S. at 922 n.23). The Court explained:

> In most such cases, there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination . . . . Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

-10-

<u>Leon</u>, 468 U.S. at 920-21.

The good-faith exception does not, however, create a blanket exemption against suppression whenever police officers search pursuant to a warrant. <u>Leon</u>, 468 U.S. at 923; <u>United States v. Weeks</u>, 160 F.3d 1210, 1212 (8th Cir. 1998). In several situations, the exclusionary rule would still serve its deterrent purpose when officers search pursuant to a warrant's terms. First, the affiant may knowingly or recklessly mislead the warrant-issuing judge. <u>Leon</u>, 468 U.S. at 923. Second, the judicial officer may wholly abandon his judicial role, essentially becoming a police officer in a robe. <u>Id.</u> Third, the affidavit supporting the warrant may be so deficient "as to render official belief in its existence entirely unreasonable." <u>Id.</u> (quotation omitted). And fourth, the warrant may be so facially deficient that no reasonable executing officer could presume it to be valid. <u>Id.</u>

Here, the police officers obtained a warrant based upon Svoboda's affidavit. The judge concluded that the affidavit established a reasonable suspicion that a no-knock entry was necessary to ensure officer safety. After examining Svoboda's affidavit in light of the standards governing no-knock entries, we hold that the officer's reliance upon the no-knock provision was objectively reasonable, and that this is the "ordinary case [where] a law enforcement officer cannot be expected to question the magistrate's . . . determination." <u>United States v. Spry</u>, 190 F.3d 829, 834 (7th Cir. 1999) (quotation omitted).

Scroggins relies heavily upon <u>Tavares</u>. There, the court concluded that there "clearly" were no exigent circumstances presented in the affidavit. "The only statement [the officer] could offer as to the dangerousness of the search was his bare conclusion in the warrant application that *unidentified* suspects *might* be involved in violent crimes." <u>Tavares</u>, 223 F.3d at 917 (emphasis added). Although the <u>Tavares</u> court did not clarify its reasoning, it appears the court held that the barebones

affidavit supporting the warrant was so deficient "as to render official belief in its existence entirely unreasonable." See Leon, 468 U.S. at 923.

Svoboda's affidavit alleged more than the possibility that unidentified suspects might be involved in violent crimes. It alleged (among other things) that the defendant was part of a large-scale drug-trafficking organization, that he had a prior arrest for narcotics and weapons, that known drug dealers repeatedly visited the premises, and that the officers had found a round from an assault rifle in his trash. The showing required of his affidavit was "not high." Tyler, 238 F.3d at 1040 (quoting Richards, 520 U.S. at 394). And we cannot agree that Svoboda's affidavit was so lacking that it rendered official belief in the existence of this not-high standard entirely unreasonable.

The good-faith exception is perfectly suited for cases like this, when the judge's decision was borderline. See United States v. Ricciardelli, 998 F.2d 8, 15 (1st Cir. 1993) (If "the warrant's defectiveness results from . . . borderline calls about the existence of probable cause [or reasonable suspicion], then the evidence may be used, despite the warrant's defectiveness."). The exclusionary rule's purpose is deterrence. That purpose would not be served by excluding evidence when, as here, the police take a close call to a judge before searching, even if a reviewing court ultimately concludes that the judge got it wrong.

## III.   CONCLUSION

We reverse the district court's ruling granting Scroggins's motion to suppress, and we remand for proceedings consistent with this opinion.

_____