The appellant was indicted and convicted for the possession of heroin in violation of Section 401, Acts of Alabama 1971, No. 1407, p. 2378 (now Section 20-2-70, Code of Alabama 1975). Sentence was fixed at three years' imprisonment. The appellant contends that her conviction is due to be reversed because of the illegal execution of a search warrant and because a proper predicate was not laid for the admission of her confession into evidence.
At approximately 11:50 on the morning of September 28, 1976, six agents of the Narcotics Division of the Mobile Police Department, armed with a search warrant, went to the residence of the appellant and her husband. From their parked automobiles the agents moved "pretty fast" onto the front porch of the residence. Before entering they paused and Officer George Washington announced "police, search warrant". This was repeated in a loud voice by another officer. The officers were observed by Eddie Laffitte, the appellant's husband, and his brother-in-law, Nathaniel Davis, who were sitting on a sofa in front of a large picture window. Laffitte grabbed a record album cover which had marijuana on it[1] and ran to the back of the residence. Some of the officers observed this conduct through the picture window before the residence was entered.
Officer Washington testified that when they "stepped on the porch, said police, they (Nathaniel Davis and Eddie Laffitte) was looking out the window and Eddie grabbed it (the marijuana) and jumped and run, they recognized us, they knew us". The officers then entered the residence by opening an unlocked screen door. The agents had different opinions on whether someone knocked when they announced their presence. Officer Washington, who was the second agent on the porch, testified that they did not knock because Eddie grabbed the marijuana and ran when they "announced" and he saw them. Officer Roderick Roy, called by the defense on the motion to suppress, testified that Officer Havard was knocking on the door "saying the police and all" when he came upon the porch and observed Eddie run from the sofa toward a hallway. Roy, when asked, "Did someone respond to the knock?", stated, "Yes, sir, they broke and ran." Roy further stated that "it might have been five or ten seconds there at the time of the knock till looked up and looked out the window and saw us and they broke and ran and at that time we entered the house".
Officer Havard, also called by the defense, testified that he did not knock because he did not have a chance. He saw Eddie and Davis sitting on the couch; they "had the marijuana in the bag, laid out and was rolling a number (marijuana cigarette)". Eddie saw Officer Havard, grabbed the bag and ran to the bathroom. All of this happened "instantaneously". Havard then entered the residence.
At the hearing on the motion to suppress, the testimony was consistent that the screen door was closed but not locked. At trial Officer Washington testified that he and Officer D. Havard were the first agents on the porch, that Officer Havard "hollered police and knocked on the door . . . he hit the door first and it didn't come open and then I believe he kicked it".
Davis testified that he was alone in the living room when the officers gave no announcement but just "came on in". Eddie testified that he was in the bathroom washing his hands when an officer entered and stuck a gun in his side. He admitted that he had the marijuana on an album cover and that he was going to put the marijuana "back in the bag and take it back outside". The appellant was in a bedroom "in bed" with her young child.
Upon entry the officers found approximately one ounce of heroin on the coffee table in front of the sofa and the marijuana which Eddie had. Other unidentified powders, capsules and tablets were found. *Page 1110 
When Officer Roy held up the heroin the appellant came out of her bedroom and spontaneously exclaimed that "that's mine. You all know I have got a habit and that's for my own personal use." The appellant also said that she "snorted it".
 I
The appellant contends that the heroin was obtained by an entry of her residence in violation of Section 15-5-9, Code of Alabama 1975, which provides:
 "To execute a search warrant, an officer may break open a door or window of a house, any part of a house or anything therein if after notice of his authority and purpose he is refused admittance."
The appellant argues that the police were never refused admittance before they forcibly entered her residence.
The propriety of the method of entering a premises varies with the exact factual circumstances involved in each particular case. State v. Newman, 12 Or. App. 266, 506 P.2d 523
(1973). In evaluating an officer's compliance with a "knock-and-announce" statute, the courts look only to the facts and circumstances with which the officer is faced at the time he makes his decision and acts upon it. People v. Schad,21 Cal.App.3d 301, 98 Cal.Rptr. 439 (1971). If the entry did not comply with the requirements of the statute, the subsequent search was not lawful and the evidence obtained thereby not admissible. Miller v. United States, 357 U.S. 301,78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). However the statute is subject to exceptions.
 "Where it appears from facts adduced that an announcement of the officers' purpose would frustrate a search, increase the personal peril of the executing officers or cause destruction of the evidence sought, there would be no necessity for compliance with the knock and announce rule, for these exceptions constitute `exigent circumstances.'"
 J. Varon, 1 Searches, Seizures and Immunities, p. 557 (2nd ed. 1974).
See also W. Ringel, Searches, Seizures, Arrests andConfessions, Section 194 (1972).
The particular rule governing the present factual situation is stated in 70 A.L.R.3d 217, 224 (1976).
 "(W)here there was some positive conduct on the part of the occupants indicating that they were not going to open the door, it has been held that the officers were justified in assuming that they had been denied admittance and thus in entering the premises."
"The refusal of admittance contemplated by the statute will rarely be affirmative, but will oftentimes be present only by implication." McClure v. United States, 332 F.2d 19, 22 (9th Cir. 1964). It is not required that the occupants of the house verbally or affirmatively refuse to respond to the officer's demand. "Failure to respond within a reasonable time was tantamount to a refusal." United States v. James, 528 F.2d 999,1017 (5th Cir. 1976).
The circumstances of this case are such as would convince a reasonable man that permission to enter had been refused and that the occupants of the residence were in the process of attempting to destroy the evidence sought. Any further announcement and delay than that which the officers observed would have frustrated the search. We conclude that the search was executed in a lawful and proper manner despite the fact that there was no affirmative refusal of admittance.
 II
The appellant also contends that the incriminating statements she made when she viewed the heroin were inadmissible because the State (1) did not show that the statements were not improperly induced or coerced and (2) did not prove the corpus delicti before the statements were introduced.
The rule is that "when the circumstances indicate that, according to the common probabilities of experience, the confession was not improperly induced, then no formal predicate is required". C. Gamble, McElroy's Alabama Evidence, Section 200.02 (4)(a) (3rd ed. 1977). "A confessory statement, which is a spontaneous exclamation, *Page 1111 
is admissible without proof that it was not obtained by improper inducements." McElroy, Section 200.02 (4)(d). The statements were volunteered by the appellant and were not made in response to any interrogation. Thus the Miranda warnings were not required. Roberts v. State, 349 So.2d 89, 94, (Ala.Cr.App.), cert. denied, 349 So.2d 94 (1977).
A showing that there is a reasonable probability of unlawful possession of narcotics or dangerous drugs by someone is sufficient to establish the corpus delicti of the crime of possession. It is not necessary to prove the accused's connection with the drugs to prove the corpus delicti. Reynoldsv. State, 346 So.2d 979 (Ala.Cr.App.), cert. denied,346 So.2d 986 (Ala. 1977); 28 C.J.S. Supp. Drugs and Narcotics § 209. Thus the fact that the heroin was found in plain view on a coffee table in the living room of an inhabited apartment constituted sufficient proof of the crime of possession.
It makes no difference, as concerns reversible error, whether the corpus delicti be proved before or after the admission of the confession so long as it is proved at sometime during the trial. Cooley v. State, 233 Ala. 407, 409, 171 So. 725 (1936).
We have searched the record and found no error prejudicial to the appellant. Therefore the judgment of the trial court is affirmed.
AFFIRMED.
All Judges concur.
[1] There was testimony that the marijuana is poured on an album cover so that the seeds can be removed.