LEIGH M. CLARK, Retired Circuit Judge.
A jury found defendant (appellant) guilty on a trial under an indictment that charged in pertinent part:
“Lewis L. Gannaway ... did knowingly and unlawfully possess cannabis, a controlled substance, in excess of one kilogram or 2.2 pounds, to-wit: 3,235.46 grams, contrary to and in violation of the Alabama Uniform Controlled Substance Act, in violation of Section 20-2-80 of the Code of Alabama.”
In addition to the fine of $25,000.00 assessed by the jury by its verdict, the trial court fixed defendant’s punishment at imprisonment for six years.
Code of Alabama 1975, § 20-2-80 provides:
“Except as authorized in chapter 2, Title 20:
“(1) Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, in excess of one kilo or 2.2 pounds of cannabis is guilty of a felony, which felony shall be known as ‘trafficking in cannabis.’ If the quantity of cannabis involved;
“a. is in excess of one kilo or 2.2 pounds, but less than 2,000 pounds, such person shall be sentenced to a mandatory minimum term of imprisonment of three calendar years and to pay a fine of $25,000.00.”
The first of two issues presented by appellant is thus stated in appellant’s brief:
“Whether the overruling of appellant’s motion to suppress based on the failure of the officers to comply with the requisites of the knock and announce statute while executing the search warrant herein was reversible error.”
“Ala.Code §§ 15-5-9, 28-1-2 (1975); U.S. Const. amends. IV, V, XIV; Ala. Const. Art. I, § 5; Daniels v. State, 391 So.2d 1021 (Ala.1980); Reynolds v. State, 46 Ala.App. 77, 238 So.2d 557 (1970).”
By a profound discussion and thorough consideration of numerous pertinent authorities, the Alabama Supreme Court in the cited opinion of Daniels v. State, per Justice Beatty, paved the way for a correct decision of the first issue presented by appellant in the instant case. In Daniels v. State and in the instant case, Code 1975, § 15-5-9, was and is the focal point of the applicable law, which provides:
“To execute a search warrant, an officer may break open any door or window of a house, any part of a house or anything therein if after notice of his authority and purpose he is refused admittance.”
Clearly applicable to the evidence in the instant case of the circumstances of the execution of the search warrant is the following statement in Daniels v. State, at 391 So.2d 1023:
“... In executing a search warrant, circumstances may exist which justify an unannounced and immediate entry. See, e.g., United States v. Singleton, 439 F.2d 381 (3rd Cir.1971); United States v. Garcia, 437 F.2d 85 (5th Cir.1971); Gilbert v. United States, 366 F.2d 923 (9th Cir.1966); see generally, Annot., 21 A.L. R.Fed. 820 (1974). Likewise, exigencies may justify a forcible entry after waiting only a brief time after announcement. See, e.g., United States v. Allende, 486 F.2d 1351 (9th Cir.1973); United States v. Cruz, 265 F.Supp. 15 (W.D.Tex.1967); United States v. Poppit, 227 F.Supp. 73 (D.Del.1964). Therefore, what constitutes a sufficient compliance with the announcement statute is necessarily dependent upon the peculiar circumstances confronting the executing officer. Laffitte v. State, 370 So.2d 1108 (Ala.Cr. App.1979)....”
Evidence bearing on the question of the validity of the execution of the search warrant was presented in three separate phas *411 es of the case, i.e., (1) on the hearing of the motion to suppress the evidence obtained by the search, (2) evidence presented after the trial of the ease commenced but out of the presence of the jury, and (3) evidence presented in the presence of the jury. As to (1), the evidence consisted of the testimo--ny of Mrs. Gannaway, defendant’s wife, and Officer Michael Hembree of the Anni-ston Police Department. As to (2), the witnesses named as to (1) and the defendant testified. As to (3), the witnesses were Deputy John Alexander of the Calhoun County Sheriffs Department, Agent Don Walden of the Alabama Bureau of Investigation, Narcotics Div., and Sgt. Dryden of the Anniston Police Department.
There was some difference between the testimony of Mr. and Mrs. Gannaway and the testimony of the officers as to the circumstances immediately preceding the execution of the search warrant, but there was little, if any, essential difference. The undisputed evidence shows that the heretofore named law enforcement officers converged on the home of defendant, his wife and their two young children, while the four were at home at approximately 3:45 P.M. on June 12, 1981; that two of the officers went to the front entrance and two of them went to the rear door of the residence. Entry at the front entrance was made a few moments before the rear door was entered. There seems to be no dispute as to the validity of the entrance into the rear door. Mrs. Gannaway opened that door for the officers to enter, and they did so. The issue between the parties is as to the entrance into the front part of the house by Deputy Alexander and Officer Hembree. The residence was a modest frame building with a small screened-in front porch with space therein for about two chairs, which were on the porch at the time. There were concrete block steps from the front yard to the screen door, which opened outwardly and had an outside knob. The screen door was closed at the time the officers arrived. The wooden door into the living room of the house was open. When the officers arrived at the front of the house, two children were in the screened-in porch. Upon their being asked where their father was, “One of them said something about he was in the house; and one of them, I believe, went back into the living room.” The following is found in the testimony of Officer Hembree:
“Q. And then what happened?
“A. It was just about the same time that we could see him [defendant] coming across the. living room to the threshold or the front door.
“Q. How far was he when you first saw him from you?
“A. It was, I guess, maybe five or six feet across the porch and then maybe ten feet on in the living room when we saw him.
“Q. And what direction did he proceed there in the living room?
“A. He was coming from the rear of the house, which was back toward the bathroom and kitchen area. He came across the living room to the front door. “Q. Now, when you saw the children there on the front porch did you knock at that time?
“A. No, sir; it was already somebody there to talk to.
“Q. Now, when you saw Mr. Gannaway approaching the threshold, what happened then?
“A. We stepped up on the porch, met him at the threshold, and Deputy Alexander gave him a copy of the search warrant, and stated that we had a search warrant for his residence.
“Q. Did you identify yourselves at any time?
“A. I displayed my badge and identification.”
In Daniels v. State, supra, the Alabama Supreme Court upheld the action of the officers in entering the residence at which appellant resided and serving a search warrant upon him. In many respects, the circumstances were similar to those in the instant case. In both cases, two officers went to the front door and two to the rear. In both cases, the complaint of defendant was as to the entry into the front door. In *412 the cited case, no screen door or screened porch was involved. According to the undisputed evidence therein by the officer effectuating the entry into the front door, he “knocked on the front door approximately four or five times and received no response” and then he “announced himself as a deputy sheriff ... with a search warrant for the residence.” No one answered the door, and the officer, “having heard movement within the house ... hit the door with his shoulder and forced his way in.” According to the undisputed testimony of the officer, “Approximately two or three minutes elapsed from the time he knocked on the door until the time he made his forcible entry.” In the fact that the officer in Daniels v. State, supra, actually knocked on the door, the case was more favorable to the State than the instant case. However, in several other respects, the instant case is more favorable to the State than the Daniels case. There was considerable force exercised by the officer in the Daniels case; there was practically no force exercised by the officer in the instant case. The screen door presented little opportunity for the officers to so knock thereon as to be heard by anyone in the house itself, unless the officer had used the screen door as a knocker by repeatedly opening it and slamming it, which would have been highly unbecoming, frightening to the children and alarming to the neighborhood.
We find much more in Daniels v. State, supra, to uphold the execution of the search warrant than to vitiate it, both in the opinion itself and in the numerous authorities cited therein. In most of said authorities, execution of the search warrant there involved was upheld. In general, we are persuaded that the conduct of the officers in going onto the porch and into the house conformed to legal requirements. Actually, until they had served the warrant on the defendant, they did no more and no less than what would have been expected of general business or social visitors. Even if their conduct can be correctly described as expeditious, it clearly was not precipitate or provocative. Specifically, we conclude that they did not violate Section 15-5-9 of Alabama Code 1975.
The second issue presented by appellant, by which he asserts that the trial court should not have submitted the case to the jury has two prongs:
“(1) Ala.Code § 20-2-80 violates the mandate of separation of powers contained in Ala Const. Art. Ill, § 43 (1901) and (2) that ‘it was the State’s burden to prove that the weight of the contraband minus the prohibited matter was in excess of the statutory threshold of 2.2 pounds.’ ”
Both of these contentions have been recently decided adversely to appellant in Dickerson v. State, Ala.Cr.App., 414 So.2d 998 (1982).
As to the contention that the particular statute violates the doctrine of separation of powers expressed in Article III, § 43 of the Alabama Constitution of 1901, it was held, after a thorough consideration of the question and the citation of abundant authorities as to it:
“Consequently, we find § 20-2-80(1) not unconstitutionally vague or indefinite as to its sentencing scheme or violative of the separation of powers doctrine of § 43, supra.” Dickerson v. State, supra, at 414 So.2d 1005.
In urging that the evidence in the instant case does not show that the marijuana found in the possession of defendant was in excess of 2.2 pounds, in that the evidence disclosed that the amount included “stems, stalks and seeds,” appellant challenges the applicability here of that part of the opinion in Dickerson v. State, supra, in which, in reliance upon numerous authorities, it is stated:
“It is well established that the burden is upon the appellant to establish and bring himself within any exclusion which is found not in the enacting clause defining a crime but rather in a subsequent clause or statute. Specifically, he must establish that the marihuana seized from his residence contained excludable matter falling within the definition of such under § 20-2-2(15)....”
*413 Without agreeing with appellant and without entering into an extensive discussion of the question which appellant’s brief on the point would require, we note that, irrespective of the party upon whom the burden was in the particular respect under consideration, there was ample evidence that the “stems, stalks and seeds” of the marijuana possessed by defendant were not of sufficient weight to have prevented the total weight of the particular controlled substance from exceeding 2.2 pounds. This is demonstrated by part of the testimony of Lt. Richard Townsley, who was in charge of the Police Department Crime Laboratory, while being cross-examined by defendant’s attorney out of the presence of the jury, in pertinent part as follows:
“Q. I’m asking you, though, if it is not a fact that those particular elements of the plant, which were in this plant material when you weighed it, do not contain the TCH or—
“A. THC.
“Q. THC?
“A. Stems, stalks and seeds ungerminated would not contain THC, to my knowledge.
“Q. You didn’t perform any test on this matter in this material to determine, say the seeds, for instance whether they had any capability to germinate?
“A. No, sir. There was no need to; there was enough of the other material. “Q. Just respond to the question. You didn’t perform any test on that?
“A. No, sir.”
In concluding our consideration of appellant’s contention that the evidence failed to show that defendant possessed “cannabis, a controlled substance, in excess of one kilogram or 2.2 pounds, to-wit: 3,234.46 grams,” we note that it was only necessary for the weight of the cannabis to have been approximately one-third of the total weight of the material that was seized and weighed. Furthermore, it should be noted that, apparently with the approval of both parties, the court orally charged the jury on the lesser included offense of possession of marijuana and gave the jury three forms of verdict, one finding the defendant not guilty, one finding defendant guilty of trafficking in cannabis and one finding him guilty of possession of marijuana.
No issue is presented that requires a reversal of the judgment of the trial court, which should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.