SHAW, Judge.
The appellant, Eddrett Demond Walker, pleaded guilty to the unlawful possession of cocaine, a violation of § 13A-12- *367 212(a)(1), Ala.Code 1975. He was sentenced to five years’ imprisonment. Before pleading guilty, Walker expressly reserved the right to appeal the trial court’s denial of his motion to suppress evidence of the cocaine found in a motel room.
At the suppression hearing, Chris Murray, a sergeant with the Auburn Police Department, testified that in September 2001, pursuant to numerous complaints regarding the sale of cocaine, he and several other officers began a surveillance operation around the Plaza Motel. Sgt. Murray said that on September 7, 2001, he sent a confidential informant to the motel to purchase cocaine. Sgt. Murray testified that before the purchase he searched the informant and determined that the informant did not have any money or drugs on his person. He then gave the informant a $20 bill which had been photocopied to record the serial numbers and put a body transmitter on the informant. The informant then went to the motel to make the purchase, while Sgt. Murray and the other officers hid in the woods near the motel. Sgt. Murray testified that over the body transmitter the informant indicated that he had met with a person he knew only as “Ed” and that he and “Ed” had entered room 24 of the motel, where other people were already present. (R. 10.) After the informant entered room 24, Sgt. Murray said, he heard over the body transmitter what sounded like “a drug transaction.” (R. 11.) Sgt. Murray testified that the informant stayed in the motel room for approximately two minutes, and then returned to a prearranged meeting location, where he gave the officers a rock-like substance that was later determined, to be crack cocaine.
Sgt. Murray testified that after the purchase two of the officers at the scene indicated that they had seen the man whom the informant had met near the motel, i.e., “Ed,” and had recognized him as Walker. They then checked to see if Walker had any outstanding arrest warrants and learned that he had two outstanding warrants from Auburn Municipal Court.[1]. After they observed Walker leave room 24 of the motel and enter room 20 of the motel, they decided to take Walker into custody on the outstanding warrants. Sgt. Mürray testified that he and the other officers went to room 20 of the motel, knocked on the door and announced “police, open the door,” several times, but received no response.[2] (R. 20.) They then kicked in the door and entered room 20, where they found Walker sitting in a chair, wearing earphones and listening to music. Walker was arrested and searched, and the $20 bill the informant had used to purchase the cocaine was found on Walker’s person. In addition, cocaine and other drug paraphernalia were found in the room.[3]
Walker contends that the trial court erred in denying his motion to suppress the evidence of the cocaine found in the motel room because, he says, the officers failed to comply with the “knock-and-announce” statute before they entered the motel room. Specifically, he argues that although the officers knocked and identified themselves as police officers, they *368 failed to announce their purpose before entering the room, i.e., that they were there to arrest Walker on two outstanding warrants.
Initially, we note that we apply a de novo standard of review in this case because the evidence presented at the suppression hearing was undisputed. See State v. Hill, 690 So.2d 1201 (Ala.1996), and Barnes v. State, 704 So.2d 487 (Ala.Crim.App.1997).
Section 15-10-3, Ala.Code 1975, provides, in relevant part:
“(a) An officer may arrest a person without a warrant, on any day and at any time in any of the following instances:
[[Image here]]
“(6) When the officer has actual knowledge that a warrant for the person’s arrest for the commission of a felony or misdemeanor has been issued, provided the warrant was issued in accordance with this chapter. However, upon request the officer shall show the warrant to the arrested person as soon as possible. If the officer does not have the warrant in his or her possession at the time of arrest the officer shall inform the defendant of the offense charged and of the fact that a warrant has been issued.”
Section 15-10-4, Ala.Code 1975,[4] provides:
“When arresting a person without a warrant, the officer must inform of his authority and the cause of the arrest, except when the person is arrested in the actual commission of a public offense or on pursuit. In making a warrantless arrest, an officer has authority to break open an outer or inner door or window of a dwelling house if, after notice of his office and purpose, he is refused admittance.”
(Emphasis added.)
As Walker correctly asserts, and as the record indicates, although the officers knocked and announced their identity, they failed to announce their purpose before entering the motel room. However, we hold, based on the circumstances of this case, that the officers’ failure to announce their purpose before entering the room did not violate § 15-1CM and does not require reversal.
As a threshold matter, we hold that the Legislature intended for § 15-10-4 to codify the general knock-and-announce principle and its recognized common-law exceptions. In Weaver v. Hollis, 247 Ala. 57, 22 So.2d 525 (1945), the Alabama Supreme Court held that § 12, Title 16, Code of Alabama 1940, which on its face contained no exceptions to a husband’s right to inherit from his deceased wife, who died intestate, had to be read in light of the common-law rule that a man who felo-niously killed his wife could not share in her estate. Recognizing that the Legislature had incorporated the common-law exception, the Court noted:
“Alabama is a common-law state,— section 3, Title 1, Code of 1940 [now § 1-3-1, Ala.Code 1975]. The common law is the base upon which all of the laws of this State have been constructed, and when our courts are called upon to construe a statute, — when they are called upon to ascertain and declare the legal effect and meaning of a legislative *369 enactment, — they must read the statute in the light of the common law. Cloverdale Homes v. Town of Cloverdale, 182 Ala. 419, 62 So. 712, 47 L.R.A., N.S., 607 [(1913), overruled on other grounds, City of Orange Beach v. Benjamin, 821 So.2d 193 (Ala.2001)]. ‘The presumption is that the legislature does not intend to make any alteration in the law beyond what it explicitly declares, either in express terms or by unmistakable implication, and that it does not intend to overthrow fundamental principles, infringe rights, or depart from a general system of law without expressing its intention with irresistible clearness.’ Duncan v. Rudulph, 245 Ala. 175, 16 So.2d 313, 314 [(1943)].
[[Image here]]
“... [W]e are not grafting an exception onto the statute by construction, but are construing the statute according to the obvious intent of the Legislature, who, we know, never intended that a husband who feloniously killed his wife should inherit a part of her separate estate.”
247 Ala. at 60-61, 22 So.2d at 528-29.
The exceptions to the knock-and-announce principle are so deeply rooted in the common law and so grounded in common sense and logic that we cannot, as Walker suggests, disregard the obvious latent ambiguity resulting from the omission in the statute to any reference to them. Therefore, we read § 15-10-4 as an affirmation of the common-law knock-and-announce principle. In doing so, we find support in caselaw from both the Alabama Supreme Court and this Court. We see no reason to distinguish our reasoning here from that used by the Supreme Court in Daniels v. State, 391 So.2d 1021 (Ala.1980). In Daniels, the Court, construing the knock-and-announce requirement of § 15-5-9, Ala.Code 1975,[5] stated:
“The constitutional requirement of announcement serves basically three purposes: (1) the prevention of violence or physical injury to the police and to innocent persons who may also be present on the premises, (2) avoidance of unexpected exposure of the occupant’s private activities, and (3) prevention of property damage resulting from a forced entry. 1 W. Ringel, Searches & Seizures, Arrests and Confessions § 6.3 (2d ed.1979); 2 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.8 (1978). Yet, at the same time, there exists the countervailing concern to preserve surprise, and thereby prevent escape and the possible destruction of evidence. As a result, both state and federal courts have held that the exigencies of any given situation must be considered in balancing the individual’s right to privacy and the public’s corresponding interest in the prevention of crime and apprehension of criminals. 68 Am.Jur.2d Searches and Seizures § 91 (1973). In executing a search warrant, circumstances may exist which justify an unannounced and immediate entry. See e.g., United States v. Singleton, 439 F.2d 381 (3rd Cir.1971); United States v. Garcia, 437 F.2d 85 (5th Cir.1971); Gilbert v. United States, 366 F.2d 923 (9th Cir.1966); see generally Annot., 21 A.L.R.Fed. 820 (1974). Likewise, exigencies may justify a forcible entry after waiting only a brief time after announcement. See e.g., United States v. Al *370 lende, 486 F.2d 1351 (9th Cir.1973); United States v. Cruz, 265 F.Supp. 15 (W.D.Tex.1967); United States v. Poppit[t], 227 F.Supp. 73 (D.Del.1964). Therefore, what constitutes a sufficient compliance with the announcement statute is necessarily dependent upon the peculiar circumstances confronting the executing officer. Laffitte v. State, 370 So.2d 1108 (Ala.Cr.App.1979).”
391 So.2d at 1023.
As the Daniels Court noted, this Court, in Laffitte v. State, 370 So.2d 1108 (Ala.Crim.App.1979), held that § 15-5-9 was subject to the common-law exceptions not specifically mentioned in the statute:
“However the statute is subject to exceptions.
“ ‘Where it appears from facts adduced that an announcement of the officers’ purpose would frustrate a search, increase the personal peril of the executing officers or cause destruction of the evidence sought, there would be no necessity for compliance with the knock and announce rule, for these exceptions constitute “exigent circumstance.” ’
“J. Varón, 1 Searches, Seizures and Immunities, p. 557 (2nd ed.1974).”
370 So.2d at 1110.
The common-law knock-and-announce principle codified by the Legislature in § 15-10-4 has a long and distinguished pedigree. Holding that the principle was incorporated as part of the reasonableness inquiry under the Fourth Amendment to the United States Constitution, the Supreme Court, in Wilson v. Arkansas, 514 U.S. 927, 931-36, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), discussed in detail its origin and development:
“The Fourth Amendment to the Constitution protects ‘[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.’ In evaluating the scope of this right, we have looked to the traditional protections against unreasonable searches and seizures afforded by the common law at the time of the framing. See California v. Hodari D., 499 U.S. 621, 624 (1991); United States v. Watson, 423 U.S. 411, 418-420 (1976); Carroll v. United States, 267 U.S. 132, 149 (1925). ‘Although the underlying command of the Fourth Amendment is always that searches and seizures be reasonable,’ New Jersey v. T.L.O., 469 U.S. 325, 337 (1985), our effort to give content to this term may be guided by the meaning ascribed to it by the Framers of the Amendment. An examination of the common law of search and seizure leaves no doubt that the reasonableness of a search of a dwelling may depend in part on whether law enforcement officers announced their presence and authority prior to entering.
“Although the common law generally protected a man’s house as ‘his castle of defence and asylum,’ 3 W. Blackstone, Commentaries *288 (hereinafter Blackstone), common-law courts long have held that ‘when the King is party, the sheriff (if the doors be not open) may break the party’s house, either to arrest him, or to do other execution of the K[ing]’s process, if otherwise he cannot enter.’ Semayne’s Case, 5 Co. Rep. 91a, 91b, 77 Eng. Rep. 194, 195 (K.B.1603). To this rule, however, common-law courts appended an important qualification:
“ ‘But before he breaks it, he ought to signify the cause of his coming, and to make request to open doors ..., for the law without a default in the owner *371 abhors the destruction or breaking of any house (which is for the habitation and safety of man) by which great damage and inconvenience might ensue to the party, when no default is in him; for perhaps he did not know of the process, of which, if he had notice, it is to be presumed that he would obey it....’ Ibid., 77 Eng. Rep., at 195-196.
“See also Case of Richard Curtis, Fost. 135, 137, 168 Eng. Rep. 67, 68 (Crown 1757)(‘[N]o precise form of words is required in a case of this kind. It is sufficient that the party hath notice, that the officer cometh not as a mere trespasser, but claiming to act under a proper authority ...’); Lee v. Gansell, Lofft 374, 381-382, 98 Eng. Rep. 700, 705 (K.B.1774)(‘[A]s to the outer door, the law is now clearly taken’ that it is privileged; but the door may be broken ‘when the due notification and demand has been made and refused’).[2]
“Several prominent founding-era commentators agreed on this basic principle. According to Sir Matthew Hale, the ‘constant practice’ at common law was that ‘the officer may break open the door, if he be sure the offender is there, if after acquainting them of the business, and demanding the prisoner, he refuses to open the door.’ See 1 M. Hale, Pleas of the Crown *582. William Hawkins propounded a similar principle: ‘the law doth never allow’ an officer to break open the door of a dwelling ‘but in cases of necessity,’ that is, unless he ‘first signify to those in the house the cause of his coming, and request them to give him admittance.’ 2 W. Hawkins, Pleas of the Crown, ch. 14, § 1, p. 138 (6th ed. 1787). Sir William Blackstone stated simply that the sheriff may ‘justify breaking open doors, if the possession be not quietly delivered.’ 3 Blackstone *412.
“The common-law knock and announce principle was woven quickly into the fabric of early American law. Most of the States that ratified the Fourth Amendment had enacted constitutional provisions or statutes generally incorporating English common law, see, e.g., N.J. Const, of 1776, § 22, in 5 Federal and State Constitutions 2598 (F. Thorpe ed. 1909) (‘[T]he common law of England ... shall still remain in force, until [it] shall be altered by a future law of the Legislature’); N.Y. Const. of 1777, Art. 35, in id., at 2635 (‘[S]uch parts of the common law of England ... as ... did form the law of [New York on April 19, 1775] shall be and continue the law of this State, subject to such alterations and provisions as the legislature of this State shall, from time to time, make concerning the same’); Ordinances of May 1776, ch. 5, § 6, in 9 Statutes at Large of Virginia 127 (W. Hening ed. 1821)(‘[T]he common law of England ... shall be the rule of decision, and shall be considered as in full force, until the same shall be altered by the legislative power of this colony’), and a few States had enacted statutes specifically embracing the common-law view that the breaking of the door of a dwelling was permitted once admittance was refused, see, e.g., Act of Nov. 8, 1782, ch. 15, ¶ 6, in Acts and Laws of Massachusetts 193 (1782); Act of Apr. 13, 1782, ch. 39, § 3, in 1 Laws of the State of New York 480 (1886); Act of June 24, 1782, ch. 317, § 18, in Acts of the General Assembly of New-Jersey (1784) (reprinted in The First Laws of the State of New Jersey 293-294 (J. Cushing comp.1981)); Act of Dec. 23, 1780, ch. 925, § 5, in 10 Statutes at Large of Pennsylvania 255 (J. Mitchell & H. Flanders comp.1904). Early American courts similarly embraced the common-law knock and announce princi- *372 pie. See, e.g., Walker v. Fox, 32 Ky. 404, 405 (1834); Burton v. Wilkinson, 18 Vt. 186, 189 (1846); Howe v. Butterfield, 58 Mass. 302, 305 (1849). See generally Blakey, The Rule of Announcement and Unlawful Entry, 112 U. Pa. L.Rev. 499, 504-508 (1964) (collecting cases).
“Our own cases have acknowledged that the common-law principle of announcement is ‘embedded in Anglo-American law,’ Miller v. United States, 357 U.S. 301, 313 (1958), but we have never squarely held that this principle is an element of the reasonableness inquiry under the Fourth Amendment.[3] We now so hold. Given the longstanding common-law endorsement of the practice of announcement, we have little doubt that the Framers of the Fourth Amendment thought that the method of an officer’s entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure. Contrary to the decision below, we hold that in some circumstances an officer’s unannounced entry into a home might be unreasonable under the Fourth Amendment.
“This is not to say, of course, that every entry must be preceded by an announcement. The Fourth Amendment’s flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests. As even petitioner concedes, the common-law principle of announcement was never stated as an inflexible rule requiring announcement under all circumstances. See Ker v. California, 374 U.S. 23, 38 (1963)(plurality opinion)(‘[I]t has been recognized from the early common law that ... breaking is permissible in executing an arrest under certain circumstances’); see also, e.g., White & Wiltsheire, 2 Rolle 137, 138, 81 Eng. Rep. 709, 710 (K.B.1619)(upholding the sheriffs breaking of the door of the plaintiffs dwelling after the sheriffs bailiffs had been imprisoned in plaintiffs dwelling while they attempted an earlier execution of the seizure); Pugh v. Griffith, 7 Ad. & E. 827, 840-841, 112 Eng. Rep. 681, 686 (K.B.1838)(holding that ‘the necessity of a demand ... is obviated, because there was nobody on whom a demand could be made’ and noting that White & Wiltsheire leaves open the possibility that there may be ‘other occasions where the outer door may be broken’ without prior demand).
“Indeed, at the time of the framing, the common-law admonition that an officer ‘ought to signify the cause of his coming,’ Semayne’s Case, 5 Co. Rep., at 91b, 77 Eng. Rep., at 195, had not been extended conclusively to the context of felony arrests. See Blakey, supra, at 503 (‘The full scope of the application of the rule in criminal cases ... was never judicially settled’); Launock v. Brown, 2 B. & Aid. 592, 593, 106 Eng. Rep. 482, 483 (K.B.1819)(‘It is not at present necessary for us to decide how far, in the case of a person charged with felony, it would be necessary to make a previous demand of admittance before you could justify breaking open the outer door of his house’); W. Murfree, Law of Sheriffs and Other Ministerial Officers § 1163, p. 631 (1st ed. 1884)(‘[A]lthough there has been some doubt on the question, the better opinion seems to be that, in cases of felony, no demand of admittance is necessary, especially as, in many cases, the delay incident to it would enable the prisoner to escape’). The common-law principle gradually was applied to cases involving felonies, but at the same time the courts continued to recognize that under certain circumstances the pre *373 sumption in favor of announcement necessarily would give way to contrary considerations.
“Thus, because the common-law rule was justified in part by the belief that announcement generally would avoid ‘the destruction or breaking of any house ... by which great damage and inconvenience might ensue,’ Semayne’s Case, supra, at 91b, 77 Eng. Rep., at 196, courts acknowledged that the presumption in favor of announcement would yield under circumstances presenting a threat of physical violence. See, e.g., Read v. Case, 4 Conn. 166, 170 (1822)(plaintiff who ‘had resolved ... to resist even to the shedding of blood ... was not within the reason and spirit of the rule requiring notice’); Mahomed v. The Queen, 4 Moore 239, 247, 13 Eng. Rep. 293, 296 (P.C. 1843)(‘While he was firing pistols at them, were they to knock at the door, and to ask him to be pleased to open it for them? The law in its wisdom only requires this ceremony to be observed when it possibly may be attended with some advantage, and may render the breaking open of the outer door unnecessary’). Similarly, courts held that an officer may dispense with announcement in cases where a prisoner escapes from him and retreats to his dwelling. See, e.g., ibid.; Allen v. Martin, 10 Wend. 300, 304 (N.Y.Sup.Ct.1833). Proof of ‘demand and refusal’ was deemed unnecessary in such cases because it would be a ‘senseless ceremony’ to require an officer in pursuit of a recently escaped arrestee to make an announcement prior to breaking the door to retake him. Id., at 304. Finally, courts have indicated that unannounced entry may be justified where police officers have reason to believe that evidence would likely be destroyed if advance notice were given. See Ker, supra, at 40-41 (plurality opinion); People v. Maddox, 46 Cal.2d 301, 305-306, 294 P.2d 6, 9 (1956).
“We need not attempt a comprehensive catalog of the relevant countervailing factors here. For now, we leave to the lower courts the task of determining the circumstances under which an unannounced entry is reasonable under the Fourth Amendment. We simply hold that although a search or seizure of a dwelling might be constitutionally defective if police officers enter without prior announcement, law enforcement interests may also establish the reasonableness of an unannounced entry.
*374 See also Richards v. Wisconsin, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), in which the Court recognized that so-called “no-knock” entries are justified when police officers have a reasonable suspicion that knocking and announcing their presence before entering would “be dangerous or futile, or ... inhibit the effective investigation of the crime,” 520 U.S. at 394, 117 S.Ct. 1416; United States v. Ramirez, 523 U.S. 65, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998), wherein the Court held, among other things, that 18 U.S.C. § 3109, the federal equivalent of § 15-5-9, codified the exceptions to the common-law announcement requirement; and United States v. Banks, 540 U.S. 31, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003).
As these decisions clearly reflect, the common-law principle of announcement was never stated as an inflexible rule requiring announcement under all circumstances. To the contrary, countervailing law-enforcement interests have always been at the heart of any inquiry as to whether the presumption in favor of announcement should give way. Illustrative of this is the line of cases in Alabama recognizing various exceptions to the knock-and-announce requirement. See, e.g., Moore v. State, 650 So.2d 958 (Ala.Crim.App.1994) (involving legality of a search under the Fourth Amendment); McClellan v. State, 452 So.2d 909 (Ala.Crim.App.1984) (involving the legality of a search under § 15-5-9); Houk v. State, 455 So.2d 115 (Ala.Crim.App.l984)(same); and Laffitte v. State, supra (same), all four cases recognizing exceptions to the announcement requirement when the announcement of purpose would frustrate a search, increase the personal peril of officers executing a search warrant, or cause the destruction of the evidence sought.
In addition, as noted in Richards v. Wisconsin, supra, and of particular significance to the present case, the common law recognized a useless-gesture or futility exception to the announcement requirement. This exception, “the basic principle of which is that law enforcement officers should be relieved of having to engage in meaningless procedural formalities that do nothing to further the policies behind the knock and announce rule,” Commonwealth v. Antwine, 417 Mass. 637, 639, 632 N.E.2d 818, 819 (1994), has also been recognized by state and federal courts. See, e.g., State v. Shelly, 58 Wash.App. 908, 795 P.2d 187 (1990); State v. Jones, 127 N.H. 515, 503 A.2d 802 (1985); State v. Lohnes, 344 N.W.2d 605 (Minn.1984); State v. Miller, 449 A.2d 1065 (Del.Super.1982); United States v. Leichtnam, 948 F.2d 370 (7th Cir.1991) (construing § 3109); United States v. One Parcel of Real Property, 873 F.2d 7 (1st Cir.1989)(same); and United States v. Finch, 998 F.2d 349 (6th Cir.1993)(same). See also Wayne R. LaFave et al., Criminal Procedure § 3.4(h) (2d ed.1999).
In the present case, the testimony at the suppression hearing established that the officers knew that Walker had entered room 20 of the motel, and they knocked repeatedly on the door of that room and *375 announced their presence and authority several times — all without any response from within the room — before breaking through the door.[6] Under these circumstances' — where the officers, who clearly knocked and identified themselves, could have reasonably concluded that for some reason Walker had not heard their knocks, and thus was not going to respond, or that Walker’s failure to respond indicated his unwillingness to open the door and cooperate with the police — an announcement of purpose would have been a useless gesture. Requiring the officers to yell “arrest warrant” or “we have a warrant for Walker’s arrest” or some other words to that effect before making entry would have been futile and would not have furthered any purpose underlying the announcement requirement. Thus, under the circumstances in this case, the officers were excused from announcing their purpose. The trial court did not err in denying Walker’s motion to suppress.[7]
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.

. One warrant was for failing to pay court-ordered fines and had been pending for approximately one month, and the second warrant was for resisting arrest and had been pending for nine days.

. Other officers entered room 24 at the same time because they also had an outstanding warrant for one of the individuals in that room.

.Detective Pat McCullough also testified at the suppression hearing; his testimony corroborated Sgt. Murray's testimony.

. It appears from the record that although Sgt. Murray had knowledge of the two outstanding warrants for Walker, he did not actually have them in his possession at the time of Walker's arrest. Therefore, § 15-10-4 (the knock-and-announce rule dealing with war-rantless arrests), not § 15-10-2 (the knock- and-announce rule dealing with arrests based on warrants), is applicable.

. Section 15-5-9 provides that "[t]o execute a search warrant, an officer may break open any door or window of a house, any part of a house or anything therein if after notice of his authority and purpose he is refused admittance.” Sections 15-10-2 (see note 4, supra), 15-10-4, and 15-5-9 are all identical with respect to the knock-and-announce requirements.

"2This ‘knock and announce’ principle appears to predate even Semayne's Case, which is usually cited as the judicial source of the common-law standard. Semayne’s Case itself indicates that the doctrine may be traced to a statute enacted in 1275, and that at that time the statute was 'but an affirmance of the common law. 5 Co. Rep., at 91b, 77 Eng. Rep., at 196 (referring to 3 Edw. I, ch. 17, in 1 Statutes at Large from Magna Carta to Hen. 6 (O. Ruffhead ed. 1769)(providing that if any person takes the beasts of another and causes them 'to be driven into a Castle or Fortress,' if the sheriff makes 'solem[n] de-man[d]' for deliverance of the beasts, and if the person 'did not cause the Beasts to be delivered incontinent,’ the King 'shall cause the said Castle or Fortress to be beaten down without Recovery')).

"3In Miller, our discussion focused on the statutory requirement of announcement found in 18 U.S.C. § 3109 (1958 ed.), not on the constitutional requirement of reasonableness. See 357 U.S., at 306, 308, 313. See also Sabbath v. United. States, 391 U.S. 585, 591, n. 8 (1968)(suggesting that both the 'common law’ rule of announcement and entry and its ‘exceptions' were codified in § 3109); Ker v. California, 374 U.S. 23 *374 (1963)(plurality opinion)(reasoning that an unannounced entry was reasonable under the ‘exigent circumstances' of that case, without addressing the antecedent question whether the lack of announcement might render a search unreasonable under other circumstances).”

. When the officers did enter the room, Walker was sitting in a chair with earphones on listening to music, indicating that Walker had not heard the officers knocking on the door.

. Because we hold that the “useless gesture” exception to the notice requirement applies here, we need not address the State’s argument that the “exigent circumstances" exception also applies.