# UNITED STATES *v.* RAMIREZ

No. 96–1469.   Argued January 13, 1998—Decided March 4, 1998

REHNQUIST, C. J., delivered the opinion for a unanimous Court.

*David C. Frederick* argued the cause for the United States. With him on the briefs were *Solicitor General Waxman, Acting Assistant Attorney General Keeney, Deputy Solicitor General Dreeben,* and *J. Douglas Wilson.*

*Michael R. Levine* argued the cause and filed a brief for respondent.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

In *Richards* v. *Wisconsin,* 520 U. S. 385, 394 (1997), we held that so-called "no-knock" entries are justified when police officers have a "reasonable suspicion" that knocking and announcing their presence before entering would "be dangerous or futile, or . . . inhibit the effective investigation of

---

*Briefs of *amici curiae* urging reversal were filed for Americans for Effective Law Enforcement, Inc., et al. by *Richard M. Weintraub, Bernard J. Farber, Fred E. Inbau, Wayne W. Schmidt,* and *James P. Manak;* and for the State of Ohio et al. by *Betty D. Montgomery,* Attorney General of Ohio, *Jeffrey S. Sutton,* State Solicitor, and *Elise Porter,* Assistant Attorney General, and by the Attorneys General for their respective jurisdictions as follows: *William H. Pryor, Jr.,* of Alabama, *Bruce M. Botelho* of Alaska, *Winston Bryant* of Arkansas, *Daniel E. Lungren* of California, *M. Jane Brady* of Delaware, *Robert Butterworth* of Florida, *Margery S. Bronster* of Hawaii, *Alan G. Lance* of Idaho, *James E. Ryan* of Illinois, *Carla J. Stovall* of Kansas, *Richard P. Ieyoub* of Louisiana, *J. Joseph Curran, Jr.,* of Maryland, *Frank J. Kelley* of Michigan, *Jeremiah W. Nixon* of Missouri, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *Dennis C. Vacco* of New York, *Michael F. Easley* of North Carolina, *Heidi Heitkamp* of North Dakota, *W. A. Drew Edmondson* of Oklahoma, *Jose Fuentes Agostini* of Puerto Rico, *Jeffrey B. Pine* of Rhode Island, *Charles M. Condon* of South Carolina, *Mark Barnett* of South Dakota, *Jan Graham* of Utah, *William H. Sorrell* of Vermont, *Richard Cullen* of Virginia, and *Christine O. Gregoire* of Washington.

*John Wesley Hall, Jr.,* and *Lisa Kemler* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging affirmance.

the crime." In this case, we must decide whether the Fourth Amendment holds officers to a higher standard than this when a "no-knock" entry results in the destruction of property. We hold that it does not.

Alan Shelby was a prisoner serving concurrent state and federal sentences in the Oregon state prison system. On November 1, 1994, the Tillamook County Sheriff's Office took temporary custody of Shelby, expecting to transport him to the Tillamook County Courthouse, where he was scheduled to testify. On the way to the courthouse, Shelby slipped his handcuffs, knocked over a deputy sheriff, and escaped from custody.

It was not the first time Shelby had attempted escape. In 1991 he struck an officer, kicked out a jail door, assaulted a woman, stole her vehicle, and used it to ram a police vehicle. Another time he attempted escape by using a rope made from torn bedsheets. He was reported to have made threats to kill witnesses and police officers, to have tortured people with a hammer, and to have said that he would " 'not do federal time.' " App. to Pet. for Cert. 38a. It was also thought that Shelby had had access to large supplies of weapons.

Shortly after learning of Shelby's escape, the authorities sent out a press release, seeking information that would lead to his recapture. On November 3, a reliable confidential informant told Bureau of Alcohol, Tobacco, and Firearms Agent George Kim that on the previous day he had seen a person he believed to be Shelby at respondent Hernan Ramirez's home in Boring, Oregon. Kim and the informant then drove to an area near respondent's home, from where Kim observed a man working outside who resembled Shelby.

Based on this information, a Deputy United States Marshal sought and received a "no-knock" warrant granting permission to enter and search Ramirez's home. Around this time, the confidential informant also told authorities that respondent might have a stash of guns and drugs hidden in

his garage. In the early morning of November 5, approximately 45 officers gathered to execute the warrant. The officers set up a portable loudspeaker system and began announcing that they had a search warrant. Simultaneously, they broke a single window in the garage and pointed a gun through the opening, hoping thereby to dissuade any of the occupants from rushing to the weapons the officers believed might be in the garage.

Respondent and his family were asleep inside the house at the time this activity began. Awakened by the noise, respondent believed that they were being burglarized. He ran to his utility closet, grabbed a pistol, and fired it into the ceiling of his garage. The officers fired back and shouted "police." At that point respondent realized that it was law enforcement officers who were trying to enter his home. He ran to the living room, threw his pistol away, and threw himself onto the floor. Shortly thereafter, he, his wife, and their child left the house and were taken into police custody. Respondent waived his *Miranda* rights, and then admitted that he had fired the weapon, that he owned both that gun and another gun that was inside the house, and that he was a convicted felon. Officers soon obtained another search warrant, which they used to return to the house and retrieve the two guns. Shelby was not found.

Respondent was subsequently indicted for being a felon in possession of firearms. 18 U. S. C. § 922(g)(1). The District Court granted his motion to suppress evidence regarding his possession of the weapons, ruling that the police officers had violated both the Fourth Amendment and 18 U. S. C. § 3109 because there were "insufficient exigent circumstances" to justify the police officers' destruction of property in their execution of the warrant. App. to Pet. for Cert. 34a.

The Court of Appeals for the Ninth Circuit affirmed. 91 F. 3d 1297 (1996). Applying Circuit precedent, that court concluded that while a "mild exigency" is sufficient to justify a no-knock entry that can be accomplished without the de-

struction of property, " 'more specific inferences of exigency are necessary' " when property is destroyed. *Id.*, at 1301. It held that this heightened standard had not been met on the facts of this case. We granted certiorari and now reverse. 521 U. S. 1103 (1997).

In two recent cases we have considered whether and to what extent "no-knock" entries implicate the protections of the Fourth Amendment. In *Wilson* v. *Arkansas,* 514 U. S. 927 (1995), we reviewed the Arkansas Supreme Court's holding that the common-law requirement that police officers knock and announce their presence before entering played no role in Fourth Amendment analysis. We rejected that conclusion, and held instead that "in some circumstances an officer's unannounced entry into a home might be unreasonable under the Fourth Amendment." *Id.*, at 934. We were careful to note, however, that there was no rigid rule requiring announcement in all instances, and left "to the lower courts the task of determining the circumstances under which an unannounced entry is reasonable under the Fourth Amendment." *Id.*, at 934, 936.

In *Richards* v. *Wisconsin,* 520 U. S. 385 (1997),[1] the Wisconsin Supreme Court held that police officers executing search warrants in felony drug investigations were never required to knock and announce their presence. We concluded that this blanket rule was overly broad and held instead that "[i]n order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Id.*, at 394.

Neither of these cases explicitly addressed the question whether the lawfulness of a no-knock entry depends on whether property is damaged in the course of the entry. It

---

[1] It should be noted that our opinion in *Richards* came down after the Court of Appeals issued its opinion in this case.

is obvious from their holdings, however, that it does not. Under *Richards*, a no-knock entry is justified if police have a "reasonable suspicion" that knocking and announcing would be dangerous, futile, or destructive to the purposes of the investigation. Whether such a "reasonable suspicion" exists depends in no way on whether police must destroy property in order to enter.

This is not to say that the Fourth Amendment speaks not at all to the manner of executing a search warrant. The general touchstone of reasonableness which governs Fourth Amendment analysis, see *Pennsylvania* v. *Mimms*, 434 U. S. 106, 108–109 (1977) *(per curiam)*, governs the method of execution of the warrant. Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression.

Applying these principles to the facts at hand, we conclude that no Fourth Amendment violation occurred. A reliable confidential informant had notified the police that Alan Shelby might be inside respondent's home, and an officer had confirmed this possibility. Shelby was a prison escapee with a violent past who reportedly had access to a large supply of weapons. He had vowed that he would " 'not do federal time.' " The police certainly had a "reasonable suspicion" that knocking and announcing their presence might be dangerous to themselves or to others.[2]

As for the manner in which the entry was accomplished, the police here broke a single window in respondent's garage. They did so because they wished to discourage Shelby, or any other occupant of the house, from rushing to the weapons that the informant had told them respondent might have

---

[2] It is of no consequence that Shelby was not found. "[I]n determining the lawfulness of entry and the existence of probable cause we may concern ourselves only with what the officers had reason to believe *at the time of their entry*." *Ker* v. *California*, 374 U. S. 23, 40–41, n. 12 (1963) (opinion of Clark, J.) (emphasis in original).

kept there. Their conduct was clearly reasonable and we conclude that there was no Fourth Amendment violation.[3]

Respondent also argues, however, that suppression is appropriate because the officers executing the warrant violated 18 U. S. C. § 3109. This statutory argument fares no better. Section 3109 provides:

> "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

Respondent contends that the statute specifies the only circumstances under which an officer may damage property in executing a search warrant, and that it therefore forbids all other property-damaging entries.

But by its terms § 3109 prohibits nothing. It merely authorizes officers to damage property in certain instances. Even accepting, *arguendo,* that the statute implicitly forbids some of what it does not expressly permit, it is of no help to respondent. In *Miller* v. *United States,* 357 U. S. 301, 313 (1958), we noted that § 3109's "requirement of prior notice . . . before forcing entry . . . codif[ied] a tradition embedded in Anglo-American law." We repeated this point in *Sabbath* v. *United States,* 391 U. S. 585, 591, n. 8 (1968) (referring to § 3109 as "codification" of the common law). In neither of

---

[3] After concluding that the Fourth Amendment had been violated in this case, the Ninth Circuit further concluded that the guns should be excluded from evidence. Because we conclude that there was no Fourth Amendment violation, we need not decide whether, for example, there was sufficient causal relationship between the breaking of the window and the discovery of the guns to warrant suppression of the evidence. Cf. *Nix* v. *Williams,* 467 U. S. 431 (1984); *Wong Sun* v. *United States,* 371 U. S. 471 (1963).

these cases, however, did we expressly hold that § 3109 also codified the exceptions to the common-law requirement of notice before entry. In *Miller* the Government made "no claim . . . of the existence of circumstances excusing compliance" and the question was accordingly not before us. 357 U. S., at 309. In *Sabbath* the Government did make such a claim, but because the record did "not reveal any substantial basis for the failure of the agents . . . to announce their authority" we did not decide the question. We did note, however, that "[e]xceptions to any possible constitutional rule relating to announcement and entry have been recognized . . . and there is little reason why those limited exceptions might not also apply to § 3109, since they existed at common law, of which the statute is a codification." 391 U. S., at 591, n. 8.

In this case the question is squarely presented. We remove whatever doubt may remain on the subject and hold that § 3109 codifies the exceptions to the common-law announcement requirement. If § 3109 codifies the common law in this area, and the common law in turn informs the Fourth Amendment, our decisions in *Wilson* and *Richards* serve as guideposts in construing the statute. In *Wilson* v. *Arkansas*, 514 U. S. 927 (1995), we concluded that the common-law principle of announcement is "an element of the reasonableness inquiry under the Fourth Amendment," but noted that the principle "was never stated as an inflexible rule requiring announcement under all circumstances." *Id.*, at 934. In *Richards* v. *Wisconsin*, 520 U. S. 385 (1997), we articulated the test used to determine whether exigent circumstances justify a particular no-knock entry. *Id.*, at 394. We therefore hold that § 3109 includes an exigent circumstances exception and that the exception's applicability in a given instance is measured by the same standard we articulated in *Richards*. The police met that standard here and § 3109 was therefore not violated.

We accordingly reverse the judgment of the Court of Appeals and remand this case for further proceedings consistent with this opinion.

*It is so ordered.*