UNITED STATES of America

v.

Eric HOLMES, Defendant

No. CRIM.01–48–P–C.

United States District Court, D. Maine.

Feb. 11, 2002.

Leonard I. Sharon, Sharon, Leary & Detroy, Auburn, ME, for Eric Holmes (1), defendants.

Jonathan R. Chapman, Office of the U.S. Attorney, Portland, ME, for U.S. Attorneys.

## MEMORANDUM OF DECISION AND ORDER GRANTING GOVERNMENT'S MOTION TO RECONSIDER AND AFFIRMING ORDER GRANTING MOTION TO SUPPRESS

GENE CARTER, District Judge.

The Court now has before it Government's Motion to Reconsider the Order Granting Defendant's Motion to Supress Evidence entered on December 11, 2001 (Docket No. 30). After consideration of the Government's arguments, the Court reaffirms its decision to suppress the evidence. Despite the fact that this Order issued after the Supreme Court ruled that thermal imaging constitutes a search within the Fourth Amendment, the Government first argues that this Court nevertheless erred in redacting that information from a consideration of probable cause.[1] *Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). It is clear from the language of *Kyllo* that the Supreme Court intended for courts to redact information unconstitutionally obtained and then, if probable cause is absent, to determine whether any other doctrine permits the consideration of the evidence seized.

Since we hold the Thermovision imaging to have been an unlawful search, it will remain for the District Court to deter-

1. In its original opposition to Defendant's Motion to Dismiss, the Government stated, "[t]he government concedes that, because of the decision in *Kyllo*, the information in Agent Milli-

gan's affidavit relating to the thermal imaging process must be disregarded." Government's Objection to Defendant's Motion to Dismiss (Docket No. 18) at 3.

mine, whether, without the evidence it provided, the search warrant issued in this case was supported by probable cause—and if not, whether there is any other basis for supporting admission of the evidence that the search pursuant to the warrant produced.

*Id.*, 121 S.Ct. at 2046. By this statement, the *Kyllo* Court left open the possibility that some exception to the exclusionary rule could apply. In this case, the Court indicated that after excising the thermal imaging information, probable cause did not exist. The Court nevertheless refrained from deciding whether *Leon*'s "good-faith" exception to the exclusionary rule applied.

The Government erroneously states, "this Court ... concluded that *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), did not enable suppression to be avoided." Government's Motion to Reconsider (Docket No. 31) at 2. To the contrary, the Court explicitly found in its Order that "the officers relied in good faith on the search warrant, which was based, in part, on acceptance of the constitutionality and validity of the warrantless use of a thermal imaging device." Order (Docket No. 30) at 13 (Section B). Although the Court "confess[ed] discomfort at the thought of permitting consideration of [the thermal imaging] evidence, even under *Leon*," Order at 13, n. 6, the Court expressly stated "[t]he unconstitutional execution of the warrant renders [a further discussion of *Leon*'s applicability] and the resolution of the issues it generates ... moot." Order at 15. The Court decided not to reach the applicability of *Leon* because it found that the search warrant was unconstitutionally executed. *See* Order at 14.

The Government next argues that the evidence would inevitably have been discovered by independent means, rendering the violation of the knock-and-announce provision of the search warrant moot. Defendant notes that this issue was neither raised in the Government's post-hearing brief nor addressed by the Court's Order. The Court notes additionally that the Government also failed to raise the issue in its original opposition to Defendant's Motion to Dismiss. *See* Government's Objection to Defendant's Motion to Suppress (Docket No. 18). The Court will address the merits of the Government's contention despite its apparent waiver of the issue.

The Government proposes that the inevitable discovery rule should apply to any search "[w]here, as here, the officers had a valid warrant to search Holmes' dwelling and the evidence at issue would have been discovered even if the officers had waited longer before entering the exterior door of the building." Government's Motion to Reconsider (Docket No. 31) at 7. Defendant responds that there was no seizure of evidence independent of the illegal conduct, nor any demonstration that the evidence would inevitably have been discovered by an independent and legal means. The Court's finding that the officers did not abide by constitutional requirements, *i.e.*, the fact that the officers executed a *de facto* no-knock warrant, absent exigent circumstances and without the authorization to do so, necessitates suppression here.

 Evidence derived from unlawful searches is generally subject to suppression. *Wong Sun v. United States*, 371 U.S. 471, 484–87, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The rule of inevitable discovery provides for an exception to the exclusionary rule where "the prosecution can show by a preponderance of the evidence that the government would have discovered the challenged evidence even had the constitutional violation to which the defendant objects never occurred." *United States v. Scott*, 270 F.3d 30 (1st Cir.2001)

(citing *Nix v. Williams*, 467 U.S. 431, 440–48, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). The Court of Appeals for the First Circuit has articulated a tripartite inquiry for applying the inevitable discovery doctrine: "first, whether 'the legal means [are] truly independent'; second, whether 'both the use of the legal means and the discovery by that means [are] truly inevitable'; and third, whether 'the application of the inevitable discovery exception either provide[s] an incentive for police misconduct or significantly weaken[s] fourth amendment protection.'" *Scott*, 270 F.3d at 42 (citing *United States v. Silvestri*, 787 F.2d 736, 744 (1st Cir.1986), *cert. denied, Silvestri v. United States*, 487 U.S. 1233, 108 S.Ct. 2897, 101 L.Ed.2d 931 (1988)).

■ With respect to the first prong, the *Silvestri* Court emphasized that "the legal means of obtaining the evidence [must] be both inevitable and independent." *Silvestri*, 787 F.2d at 746. The Government appears to suggest that no improper execution of a valid search warrant would necessitate suppression—this proposal would render unnecessary any analysis of the proper execution of search warrants. In this case, the officers not only failed to wait any appreciable amount of time, thereby executing a *de facto* no-knock entry, but they also failed to announce their presence until they were already inside the residence. Order at 6 (citing Tr. at 26). The inevitable discovery doctrine contemplates a separate and distinct source—unrelated to and untainted by the constitutional violation—in order to preserve the admissibility of evidence obtained through some violation. *See Silvestri*, 787 F.2d 736. Because the Government asserts no independent and legal means by which it would have inevitably discovered the evidence, the inquiry need go no further than the first prong

and the inevitable discovery doctrine is inapplicable to this case.

Government further argues that the violation of the knock and announce requirement did not harm any interest the requirement is intended to protect, *e.g.*, "the receipt of notice by occupants of the dwelling sufficient to avoid the degree of intrusiveness attendant to a forcible entry as well as any potential property damage that may result." Government's Motion to Reconsider at 5 (quoting *United States v. Espinoza*, 256 F.3d 718, 725 (7th Cir. 2001)). Defendant responds that two interests protected by the Fourth Amendment knock and announcement requirement are directly implicated in this case and warrant the application of the exclusionary rule: "reducing the potential for violence to both the agents and the occupant of Defendant's residence, and protecting the Defendant's privacy interest in his house." Defendant's Memorandum in Opposition to Motion to Reconsider Suppression Order (Docket No. 32) at 4 (citing *Richards v. Wisconsin*, 520 U.S. 385, 393 n. 5, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997)) ("[I]ndividuals should have an opportunity to themselves comply with the law ...."). The Court agrees that Defendant's Fourth Amendment interests were at stake, that the failure to knock and announce violated those interests, and that the suppression of evidence obtained in that illegally executed search is the appropriate remedy.

The Government finally posits that "any violation of the knock-and-announce requirement was at worst negligent." Government's Motion to Reconsider at 5. The Government relies on *Stone v. Powell*, 428 U.S. 465, 490, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), for the proposition that "proportionality is essential to the concept of justice" and that Courts should consider the "disparity in particular cases between

the error committed by the police officer and the windfall afforded a guilty defendant by application of the [exclusionary] rule." Government's Motion to Reconsider at 6 (citing *Powell,* 428 U.S. at 490, 96 S.Ct. 3037). Under some circumstances when the police execute a knock and announce warrant, a no-knock entry is acceptable. "[I]n order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards,* 520 U.S. at 394, 117 S.Ct. 1416. As the Supreme Court noted, "[t]his showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged." *Id.* at 394–95, 117 S.Ct. 1416. The Government does not contend that the agents had any "reasonable suspicion" of exigent circumstances, which would eliminate the necessity or the utility of waiting to allow a person to willingly comply with the warrant. *United States v. Ramirez,* 523 U.S. 65, 118 S.Ct. 992, 995, 140 L.Ed.2d 191 (1998). The Government conceded that a knock and an announcement were required.[2]

The Court assumes that the Government's contention is that knocking on the outside door would have been futile.[3] At the hearing, Officer LaChance testified that he thought "there would be another door *inside the house.*" Order at 5 (citing Tr. at 15) (emphasis added). Under the circumstances in this case, the Court found unreasonable Officer LaChance's stated belief that the door he entered did not lead directly into the home. Order at 17, 19–21. The circumstances here included, *inter alia,* that the officers had no information about the interior layout of the house and that surveillance had not been performed on more than a couple of occasions. Order at 20, 11–12, n. 5 (citing Tr. at 22). Additionally, upon examining a photograph of the Defendant's residence in evidence, the Court found it was not reasonable to assume the door the agents entered did not lead directly into the home. Order at 21.

To reiterate, "[t]he Fourth Amendment's protection of the home has never been tied to measurement of the quality or quantity of information obtained .... [A]ny physical invasion of the structure of the home, 'by even a fraction of an inch,' [is] too much." *Kyllo,* 121 S.Ct. at 2045 (citing *Silverman,* 365 U.S. at 512, 81 S.Ct. 679); *see also* Order at 20. The *Kyllo* Court stated: "We have said that the Fourth Amendment draws 'a firm line at the entrance to the house.' ... That line, we think, must be not only firm but also bright." *Kyllo,* 121 S.Ct. at 2046 (citing *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). In this case, the agents not only testified that they failed to recognize the outside door for what it was, but they also failed to

---

**2.** The Government conceded in its initial briefs that the warrant required the agents to provide "pre-entry notice" before entering the premises. Order at 5 (citing Government's Objection to Defendant's Motion to Suppress (Docket No. 18) at 1, n. 1).

**3.** Although not explicitly argued here, in its post-hearing brief, the Government argued that the gesture was "useless." *See* Government's Post–Hearing Brief (Docket No. 28) at

4 n. 2 (citing *Miller v. United States,* 357 U.S. 301, 310, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), and *United States v. Nicholas,* 319 F.2d 697, 698 (2d Cir.1963), for the proposition that courts have recognized a "useless gesture" exception to the knock and announce rule "in a case where the occupants have actual advance knowledge of the impending raid.").

announce their presence before opening the door. Order at 5–6 (citing Tr. at 15, 26). The amount of time between knocking and entering, which the Government admits was between two and five seconds, should not be termed a "wait" at all, because this is the amount of time it takes to move a hand from a knocking position to the door handle itself. In other words, it is *de facto* no wait at all. Absent exigent circumstances, with a warrant requiring a knock *and* an announcement, this Court found that there is an appreciable difference between waiting for some period of time, albeit very short, and not waiting at all before making "any physical invasion of the structure of the home," prior to entry across the "firm [and bright] line," at the entrance to the house. *Kyllo,* 533 U.S. 27, 121 S.Ct. at 2045, 2046.

### CONCLUSION

Accordingly, the Motion for Reconsideration is hereby **GRANTED;** and on such reconsideration, the Court's Order of December 11, 2001, granting Defendant's Motion to Suppress, is hereby, **AFFIRMED.**