**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 05-4008

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RENNIE OTIS PRICE, a/k/a Ronnie Otis Price,

Defendant - Appellant.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore.   Catherine C. Blake, District Judge. (CR-03-56)

_____

Submitted:  September 21, 2005        Decided:  October 12, 2005

_____

Before WILKINSON, KING, and SHEDD, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

_____

Gerald C. Ruter, THE LAW OFFICES OF GERALD C. RUTER, P.C., Baltimore, Maryland, for Appellant.  Allen F. Loucks, United States Attorney, Christopher J. Romano, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Rennie Otis Price appeals his conviction for conspiracy to distribute and to possess with intent to distribute 50 grams or more of cocaine base and less than 500 grams of powder cocaine and his corresponding 151-month sentence. After thorough consideration, we affirm Price's conviction. However, we vacate his sentence and remand for further consideration.

I.

Price first asserts that police officers violated his Fourth Amendment rights by executing a search warrant without first knocking and announcing their presence. In <u>Richards v. Wisconsin</u>, 520 U.S. 385, 394 (1997), the Supreme Court held that "no-knock" entries are justified when police officers have a "reasonable suspicion" that knocking and announcing their presence before entering would "be dangerous or futile, or . . . inhibit the effective investigation of the crime." The officers in this case justified their failure to knock and announce based on the violent criminal backgrounds of the two suspects (Dexter Tyson and Kevin Pariag) and the fact that the drug evidence could be quickly destroyed.

Price contends that the "no-knock" entry was unreasonable, because the officers should have known that neither suspect was in Apt. F at the time. Price further contends that, in

the absence of any danger from the suspects, the fear of destruction of drug evidence was insufficient to warrant entry without knocking and announcing.

Prior to execution of the search warrant, Tyson was observed leaving the apartment. While a detective testified that he did not know whether Pariag was in the apartment at the time of the search, Price contends that the officers knew that Pariag did not live there and that they should have done further investigation to determine Pariag's whereabouts. However, the officers observed Pariag, who was related to Tyson, at Tyson's apartment building on at least two occasions. They had information that he drove a car parked at Tyson's apartment building. In addition, Pariag had not been spotted at his own home. Pariag's criminal history included convictions for escape, burglary with a handgun, and assault with intent to murder. In addition, a canine officer alerted on the car that Pariag was driving, and the officers' surveillance strongly supported the inference that there was drug evidence in the apartment. Finally, the magistrate judge issued the warrant as a "no-knock," providing the officers another reason to believe that their entry was reasonable. See United States v. Tisdale, 195 F.3d 70, 73 (2d Cir. 1999) (regardless of exigent circumstance, officers entitled to rely on the no-knock provision of the warrant in good faith).

Thus, a reliable confidential informant and the officers' own observations supported the conclusion that Pariag might be in the apartment. Pariag was a suspected drug dealer with a violent past and a history of handgun use. In addition, the officers reasonably believed that they were dealing with experienced drug distributors who would have reason to attempt to destroy evidence unless the officers acted quickly. Thus, we find that the officers' "no-knock" entry was justified. See United States v. Ramirez, 523 U.S. 65, 71 (1998) (finding police had a reasonable suspicion that knocking and announcing would be dangerous based upon reliable information that suspect with violent background and access to weapons "might" be in respondent's home); United States v. Kennedy, 32 F.3d 876, 882 (4th Cir. 1994) (holding that it is reasonable for police officers to assume that experienced drug dealers selling small quantities from a residence will attempt to destroy the evidence if police announce their presence).[1]

---

[1] Price argues that the police could have done further investigation as to Pariag's whereabouts. However, he offers no support for the proposition that officers, armed with a warrant and a reasonable suspicion that a potentially dangerous drug dealer is in the subject apartment, are required to delay and do additional investigation that may shed further light on the suspect's location. The Richardson rule requires only that officers possess a "reasonable suspicion" that knocking before entry would be dangerous. Officers need not possess the knowledge to an absolute certainty or even by a preponderance of the evidence. Terry v. Ohio, 392 U.S. 1, 27 (1968) (holding that reasonable suspicion requires more than a hunch but less than probable cause).

- 4 -

II.

Price contends that the district court erred in denying his motion for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). In Franks, the Supreme Court ruled that a defendant is entitled to a hearing on the validity of the search warrant affidavit if he makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit, and the allegedly false statement was necessary to the finding of probable cause. Id. at 155-56. Price challenged the affiant detective's assertions that he observed Tyson conducting what appeared to be a drug deal outside of the subject apartment on December 2, 2002, because Tyson was apparently in jail at the time.

However, Price failed to make any showing that the error in the date (or the identification) provided in the affidavit was anything more than negligence, which does not justify a Franks hearing. Id. at 170. Moreover, Price still needs to show that the alleged misrepresentations were essential to the probable cause determination. On this point, Price contends that the abridged affidavit would not provide probable cause to believe that Tyson was involved in criminal activity or that Apt. F was involved.

If all references to December 2 are excised, the affidavit would still allege that (1) a confidential informant advised that Tyson and Pariag were distributing cocaine from Apt.

F; (2) detectives saw Pariag exit the building and retrieve a bag from a minivan that a canine officer alerted on; (3) detectives saw Tyson pick up a white plastic bag from the apartment building and drive away with it, while making "counter-surveillance moves" in his vehicle; (4) a trash bag deposited in the dumpster by a companion of Pariag's contained cocaine residue; (5) Tyson lived in Apt. F, while Pariag did not live in the apartment building; and (6) Tyson and Pariag were related.  We find that there was sufficient information from which probable cause could be found. See United States v. Williams, 974 F.2d 480, 481 (4th Cir. 1992) (explaining that probable cause exists if "'a man of reasonable caution' [would] believe that evidence of a crime will be found"). Thus, the district court properly denied the motion for a Franks hearing.

## III.

Price next contends that the district court erred in denying his motion to suppress his statement. Specifically, Price alleges that his confession was coerced by the officers' attempts to gain his confidence while he was in an agitated state.  A confession is invalidated by threats or implied promises only when the defendant's will is overborne and his capacity for self-determination is critically impaired.  United States v. Braxton, 112 F.3d 777, 783 (4th Cir. 1997).

The record contains no evidence that Price's will was overborne. Price testified at the motions hearing and at trial that he was not advised of his rights and he did not make the statements attributed to him by the officers. He did not assert that he was threatened, coerced, or intimidated. Moreover, even accepting Price's current story that his confession was induced by the surprise arrest of him and his girlfriend and the officers' assertions that he was not the person the police were after, the statement was still a voluntary choice. See id. (holding that "voluntariness of confession 'is not . . . to be equated with the absolute absence of intimidation'"); see also Schneckloth v. Bustamonte, 412 U.S. 218, 224 (1973) (recognizing that very few people give incriminating statements in the absence of some sort of official action). Thus, the district court properly denied Price's motion to suppress.

IV.

Price next challenges the sufficiency of the evidence to support his conviction for conspiracy. In reviewing the sufficiency of the evidence, we construe the evidence in the light most favorable to the United States and draw all reasonable inferences in its favor, sustaining the verdict if any rational trier of fact could have found the necessary elements of the crime proven beyond a reasonable doubt. United States v. Romer, 148 F.3d

359, 364 (4th Cir. 1998). If the evidence supports different, reasonable interpretations, the fact finder, not the reviewing court, decides which interpretation to believe. United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994). A defendant challenging the sufficiency of the evidence to support his conviction faces a heavy burden. United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997).

Price claims the jury's refusal to convict him of possession of crack cocaine proves that there is insufficient evidence to support his conviction for a crack cocaine conspiracy, because the only mention of crack cocaine at trial was the crack found during the search of Apt. F, which the jury clearly did not attribute to him. However, a jury verdict is not reviewable for internal inconsistencies. United States v. Powell, 469 U.S. 57, 68-69 (1984). Therefore, even if the jury found facts to support one crime, but not the other, its verdict is granted broad deference. United States v. Love, 134 F.3d 595, 606 (4th Cir. 1998).

Further, the jury's verdict is not inconsistent. Conspiracy and possession with intent to distribute each have very different elements, so Price's inference is not the only interpretation of the verdict. Moreover, Price ignores his statement to the police that he was present when Tyson cooked cocaine into crack. Thus, not only was the evidence sufficient to

convict Price of a powder cocaine conspiracy (which is undisputed by Price), but his own statement provides sufficient evidence that the scope of his agreement with other conspirators involved crack cocaine, as well.

V.

Price next claims that the district court erred by refusing to grant a mistrial after a bullet not in evidence was inadvertently sent into the jury room. The decision of whether to grant a mistrial is left to the broad discretion of the trial court. United States v. Dorlouis, 107 F.3d 248, 257 (4th Cir. 1997) (stating that "denial of a defendant's motion for a mistrial is within the sound discretion of the district court and will be disturbed only under the most extraordinary of circumstances"). We have held that, in order to show an abuse of discretion, a defendant must show prejudice, and no prejudice exists if the jury could make individual guilt determinations by following the court's cautionary instructions. United States v. West, 877 F.2d 281, 288 (4th Cir. 1989). Reversal is required only if there is a clear abuse of discretion and a "reasonable probability that the jury's verdict was influenced by the material that improperly came before it." United States v. Seeright, 978 F.2d 842, 849 (4th Cir. 1992).

Price fails to meet his burden of demonstrating that the district court abused its discretion. Following discovery of the

bullet, the jury brought the matter to the court's attention, demonstrating that the jury itself was aware of the evidence mistake. The court informed the jury that the bullet was in the box by mistake, that it was not in evidence, and that it could not be considered in any way. See Luchenburg v. Smith, 79 F.3d 388, 393 (4th Cir. 1996) (holding that jurors are presumed to follow the court's instructions). Finally, it is unclear how the bullet could have prejudiced Price. The caliber of the bullet did not match any of the firearms or ammunition discussed at trial. Moreover, Price was not convicted of a firearm offense. Thus, because there is no reasonable probability that the jury was influenced by the presence of the bullet in the evidence box, the district court properly denied the motion for a mistrial.

VI.

Price contends that he was improperly sentenced under the mandatory guidelines scheme, and he seeks imposition of the court's alternative sentence. The Government does not object.

Although Price did not specifically object in the district court to being sentenced under a mandatory guidelines scheme, counsel did raise "overall Blakely issues," and requested an alternative sentence in light of Blakely v. Washington, 542 U.S. 296 (2004). In United States v. White, 405 F.3d 208, 216-17 (4th Cir. 2005), we considered whether treating the guidelines as

mandatory was plain error in light of United States v. Booker, 125 S. Ct. 738 (2005), and held that it was. However, we declined to presume prejudice, finding that a defendant must "demonstrate, based on the record, that the treatment of the guidelines as mandatory caused the district court to impose a longer sentence than it otherwise would have imposed." White, 405 F.3d at 224. Because "the record as a whole provide[d] no nonspeculative basis for concluding that the treatment of the guidelines as mandatory 'affect[ed] the district court's selection of the sentence imposed,'" id. at 223, we concluded that the error did not affect the defendant's substantial rights and affirmed the sentence. Id. at 225.

Here, the district court imposed Price's sentence under a mandatory guidelines scheme, which is error. See id. at 216-17. In addition, the district court announced an alternate, lower sentence that it would impose were it not constrained by the guidelines. We hold that the district court's statement at sentencing conclusively indicates that the court would have sentenced Price to a lower sentence had the court proceeded under an advisory guideline scheme. Thus, the error affected Price's substantial rights, and we vacate Price's sentence and remand for further proceedings.[2]

_____

[2]We offer no criticism of the district court, who followed the law and procedure in effect when Price was sentenced. See generally Johnson v. United States, 520 U.S. 461, 468 (1997).

VII.

Based on the foregoing, we affirm Price's conviction, vacate his sentence, and remand for further proceedings.[3] We dispense with oral argument, because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED

---

[3]Although the sentencing guidelines are no longer mandatory, Booker makes clear that a sentencing court must still "consult [the] Guidelines and take them into account when sentencing." 125 S. Ct. at 767. On remand, the district court should first determine the appropriate sentencing range under the guidelines, making all factual findings appropriate for that determination. United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005). The court should consider this sentencing range, along with other factors described in 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2005), and then impose a sentence. Hughes, 401 F.3d at 546. If that sentence falls outside the guidelines range, the court should explain its reasons for the departure as required by 18 U.S.C. § 3553(c)(2) (2000). Hughes, 401 F.3d at 546. The sentence must be "within the statutorily prescribed range and . . . reasonable." Id. at 546-47.