NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2768
_____

GILBERT BADILLO;
TONYA BADILLO,
Appellants

v.

SERGEANT KEITH STOPKO, law enforcement officers in the New Jersey Division of Criminal Justice assigned to the Gangs and Organized Crime Bureau; LIEUTENANT R. MORELLO, law enforcement officers in the New Jersey Division of Criminal Justice assigned to the Gangs and Organized Crime Bureau; DETECTIVE PATRICK SOLE, law enforcement officers in the New Jersey Division of Criminal Justice assigned to the Gangs and Organized Crime Bureau; DETECTIVE LOUIS N. RENSHAW, law enforcement officers in the New Jersey Division of Criminal Justice assigned to the Gangs and Organized Crime Bureau; DETECTIVE TORREY, law enforcement officers in the New Jersey Division of Criminal Justice assigned to the Gangs and Organized Crime Bureau; DETECTIVE AITKEN, law enforcement officers in the New Jersey Division of Criminal Justice assigned to the Gangs and Organized Crime Bureau; DETECTIVE ESTRADA, law enforcement officers in the New Jersey Division of Criminal Justice assigned to the Gangs and Organized Crime Bureau; LT. SCULLY, Officer, law enforcement officers of the Monmouth County Prosecutor's Office and/or other New Jersey State law enforcement agencies, assigned to and/or working independently of the New Jersey Division of Criminal Justice; SERGEANT RUE, law enforcement officers of the Monmouth County Prosecutor's Office and/or other New Jersey State law enforcement agencies, assigned to and/or working independently of the New Jersey Division of Criminal Justice; DETECTIVE ART WISLICENY, law enforcement officers of the Monmouth County Prosecutor's Office and/or other New Jersey State law enforcement agencies, assigned to and/or working independently of the New Jersey Division of Criminal Justice; DETECTIVE SNOWDEN, law enforcement officers of the Monmouth County Prosecutor's Office and/or other New Jersey State law enforcement agencies, assigned to and/or working independently of the New Jersey Division of Criminal Justice; DETECTIVE PICKETT, law enforcement officers of the Monmouth County Prosecutor's Office and/or other New Jersey State law enforcement agencies, assigned to and/or working independently of the New Jersey Division of Criminal Justice; DETECTIVE CANON, law enforcement officers of the Monmouth County Prosecutor's Office and/or other New Jersey State law enforcement agencies assigned to and/or working independently of the New Jersey Division of Criminal Justice; DETECTIVE RAMIREZ, law enforcement officers of the Monmouth County Prosecutor's Office and/or other New Jersey State law enforcement agencies, assigned to and/or working

independently of the New Jersey Division of Criminal Justice; DETECTTIVE CAMILLIRI, law enforcement officers of the Monmouth County Prosecutor's Office and/or other New Jersey State law enforcement agencies, assigned to and/or working independently of the New Jersey Division of Criminal Justice; DETECTIVE JOSE RIVERA, law enforcement officers of the Monmouth County Sheriff's Office, and/or other New Jersey State law enforcement agencies, assigned to and/or working independently of the New Jersey Division of Criminal Justice; DETECTIVE SERGEANT DEREK ORGEN, law enforcement officers of the Monmouth County Sheriff's Office, and/or other New Jersey State law enforcement agencies, assigned to and/or working independently of the New Jersey Division of Criminal Justice; PATROLMAN CAMACHO, a law enforcement officer of the Long Branch Police Department, and/or other New Jersey State law enforcement agencies, assigned to and/or working independaently of the New Jersey Division of Criminal Justice; JOHN DOES 1-20, law enforcement officers of the New Jersey Division of Criminal Justice and/or the Monmouth County Prosecutor's Office, Monmouth County Sheriff's Office, Long Branch Police Department and/or other New Jersey State law enforcement aggencies, assig; JOHN DOES 21-40, supervisory law enforcement officers of the New Jersey Division of Criminal Justice and/or the Monmouth County Sheriff's Office, Long Branch Police Department and/or other New Jersey State law enforcement age

_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 1-11-cv-04815
(Honorable Joseph E. Irenas)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 4, 2013

Before: SCIRICA, JORDAN, and ROTH, *Circuit Judges*.

(Filed: April 3, 2013)

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Gilbert and Tonya Badillo appeal the denial of their motion for leave to amend after the court dismissed their complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Badillos' claims arose after the police wrongly concluded Gilbert was a member of

a drug ring they were investigating. Gilbert was arrested and spent 37 days in jail, and his property was damaged during a search of his home. The Badillos claim both the arrest and the search violated the Fourth Amendment. We will affirm.

I.

A.

In December 2008, the New Jersey Division of Criminal Justice, in conjunction with local law enforcement agencies, commenced Operation Real Deal, an investigation into a cocaine distribution ring. As part of the investigation, officers made a series of controlled narcotics buys and intercepted cell phone conversations between several Real Deal suspects, including one identified as "Tino." Tino used a cell phone registered to plaintiff Gilbert Badillo, so the investigators concluded Gilbert was Tino and was a member of the cocaine distribution ring.

In reality, however, Tino was Antinohel Centeno. Centeno was a friend of Gilbert's son and a participant in the Badillos' anti-gang program, so Gilbert had agreed to provide Tino with a cell phone under Gilbert's plan. Gilbert never participated in any illegal activity with the Real Deal suspects.

As a result of the investigation, defendant Sergeant Keith Stopko prepared an affidavit for the arrest of Gilbert and other Real Deal suspects, and for the search of the Badillos' home. The probable cause for Gilbert's arrest was based on the following affirmations in the affidavit. An individual named Tino, using a cell phone registered to Gilbert, made over two hundred phone calls to Real Deal suspects in which drug deals were discussed. Stopko recognized Tino's voice to be that of Gilbert's. During one call, on April 17, 2009, Tino agreed to meet with Miguel Corea, another Real Deal suspect, and retrieve drugs from Corea's home. At the meeting place, a

3

pole camera showed two individuals exit a Black Honda Accord. The individual exiting the passenger side was a Hispanic male matching Gilbert's description. This Hispanic male met with Corea and walked to Corea's home. Gilbert had several prior arrests and convictions for burglary and drug distribution.

The Badillos allege that two of these facts were false. First, they allege Stopko had never met Gilbert or heard his voice, so had no way to recognize Tino's voice as being Gilbert's. Second, they allege that the individual seen exiting the passenger side of the Black Honda and meeting with Corea on April 17 did not match Gilbert's description. Rather, this individual was an African-American male standing over six feet tall. And the individual driving the Honda was the real Tino, Antinohel Centeno.[1]

Based on the information provided in the affidavit, warrants were issued for the arrest of Gilbert and for the search of his home. After searching the Badillos' home for over three hours and finding no contraband, the police became frustrated and threatened to "destroy" the home unless Gilbert told them where the drugs and money were. Gilbert proclaimed his innocence and, in a second search, the officers destroyed furniture and punched holes in the wall. They recovered no evidence from the Badillos' home. Gilbert was arrested pursuant to the warrant and spent 37 days in jail. The charges against him were ultimately dismissed.

B.

The Badillos filed a complaint pursuant to 42 U.S.C. § 1983 against Stopko and numerous other police officers who participated in the investigation of the Real Deal suspects and the search of his home. The complaint raised several claims, including constitutional claims

---

[1] The Badillos reference the fact that Centeno was 18 years old and approximately 325 pounds, whereas Gilbert was over 40 and approximately 155 pounds. But there are no allegations that the police saw Centeno and identified him as Gilbert.

4

for illegal search and seizure, false arrest and imprisonment, malicious prosecution, supervisory liability, failure to intervene, and several state law claims. The thrust of the complaint was that the investigating defendants recklessly concluded Gilbert was Tino. The Badillos contended that after excising the various falsehoods regarding Gilbert from the affidavit, there was no probable cause for his arrest.

The theme of the Badillos' arguments before the District Court, and on appeal, is that the police conducted a flawed and incomplete investigation, and that they should have concluded Tino was Antinohel Centeno. The District Court correctly noted that this theme "confuse[s] th[e] inquiry by focusing on whether Defendants' investigation should have led them to suspect that Antinohel was Tino. The relevant inquiry here is whether there are allegations that Defendants knowingly, deliberately or with reckless disregard for the truth made false statements or omissions that call into question the finding of probable cause with respect to the search and arrest warrant for Gilbert."

The court dismissed the complaint pursuant to Fed. R. Civ. P. 12(b)(6). The court agreed with the Badillos that the identification from the pole camera on April 17 should be excised from the affidavit. It disagreed that the voice identification of Gilbert must be excised, reasoning that the police had no reason to suspect that it was not Gilbert speaking. The court concluded the affidavit contained sufficient facts to create probable cause for Gilbert's arrest even without the April 17th identification. In a footnote, the court concluded that the search of the Badillo home and the resulting property damage was reasonable in light of the type of crime involved and the evidence being searched for.

The Badillos moved to amend the complaint, attaching a proposed First Amended

5

Complaint. The First Amended Complaint contained no new facts regarding the search of the home, but simply emphasized that the damage occurred in a second search. With respect to the claim for false arrest, the First Amended Complaint clarified the falsehoods in the affidavit, included more details from the affidavit, and emphasized the type of investigatory tactics that Stopko and the police did not take. For example, the police did not perform a pretext traffic stop of Tino to confirm his identity. The court denied the motion to amend the complaint on the grounds that amendment would be futile, as the Badillos still failed to state a claim for false arrest. The Badillos appealed.[2]

## II.

The Badillos contend the District Court abused its discretion by denying them leave to amend. They have limited their appeal to two Fourth Amendment claims: false arrest and unreasonable search of their home.[3]

### A. False Arrest

"[A]n arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability for false arrest." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)). A plaintiff may succeed in an action for false arrest made pursuant to a warrant if the plaintiff shows "(1) that the officer knowingly

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291.

[3] We review the denial of leave to amend for abuse of discretion. *Winer Family Trust v. Queen*, 503 F.3d 319, 331 (3d Cir. 2007). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). "In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.*

and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Id.* at 786-87 (quotations omitted).

"Assertions are made with reckless disregard when, viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Reedy v. Evanson*, 615 F.3d 197, 213 (3d Cir. 2010) (quotation omitted). "Assertions can be made with reckless disregard for the truth even if they involve minor details – recklessness is measured not by the relevance of the information, but the demonstration of willingness to affirmatively distort truth." *Id.* (quotation omitted). "'[O]missions are made with reckless disregard for the truth when an officer recklessly omits fact that any reasonable person would know that a judge would want to know' in making a probable cause determination." *Id.* (quoting *Wilson*, 212 F.3d at 783).

The Badillos contend there were two falsities that were recklessly included in the affidavit and thus must be excised: (1) that Gilbert was seen on the pole camera exiting the Black Honda on April 17 and meeting with Corea, and (2) that Stopko recognized Gilbert's voice.[4]

The affidavit states that, on April 17, a pole camera shows a Hispanic male matching Gilbert's description exit a Black Honda and meet with Corea after Tino agreed to meet with Corea to deliver drugs. The affidavit correctly states that Gilbert is five foot five, weighs approximately 155 pounds, and has brown eyes and brown hair. The First Amended Complaint alleges, however, that the male seen on the pole camera video exiting the passenger side of the Black Honda was African American and over six-feet tall. Accordingly, the statement in the

---

[4] The Badillos also urge us to excise from the affidavit all references to Gilbert being seen with Real Deal suspects. Besides the meeting on April 17, they do not point to any other time he was identified as meeting with Real Deal suspects.

7

affidavit that this individual matched the description of Gilbert was made recklessly, and must be excised.

The Badillos also argue that the statements that Stopko recognized Gilbert's voice must be excised because Stopko had never met Gilbert and had no other means to recognize his voice. We disagree. The affidavit does not state, as the Badillos suggest, that Stopko identified Tino as Gilbert based on the voice he heard on the phone. Rather, the affidavit is better understood as Stopko stating that the calls from the phone registered to Gilbert were all made by the same person, who Stopko believed was Gilbert. With that understanding, there is no basis to excise these statements.[5]

Next, the Badillos argue that several facts relating to the investigation were recklessly omitted from the affidavit: (1) there was no direct surveillance of drug activity at the Badillos' home; (2) there was no direct surveillance of Gilbert engaged in drug activity or meeting with the Real Deal suspects; and (3) Stopko made no further efforts to determine that the cell phone registered to Gilbert was actually being used by Gilbert.[6]

The Badillos essentially argue an affidavit must include all examples of possible investigatory tactics that were either unsuccessful or not used. We disagree. *Cf. Reedy*, 615 F.3d at 214-15 (concluding it was reckless to omit, in an affidavit charging the plaintiff with filing a false police report, that the plaintiff had consistently described her assault and initially cooperated in the investigation, and that the police were investigating a similar assault); *Wilson*,

---

[5] By the same token, unlike the Badillos' interpretation of these statements, our reading of them does not provide support for a conclusion that Tino was Gilbert.
[6] The Badillos also argue the affidavit should have stated that Gilbert did not operate a Black Honda Accord. But there are no allegations to suggest the police should have known this fact. In any event, by excising the fact that Gilbert was seen exiting the Black Honda, any connection in the affidavit between Gilbert and the Black Honda is severed.

212 F.3d at 788 (finding it reckless to omit the fact that an eyewitness had failed to identify plaintiff as the perpetrator). Moreover, a magistrate is likely to expect that all significant evidence would be included in an affidavit, especially one as detailed as Stopko's. The magistrate would infer, for example, that there was no direct surveillance of Gilbert engaged in drug activity. Accordingly, we agree with the District Court that there were no facts recklessly omitted from the affidavit.

The second step in our analysis is to determine whether the falsities in the affidavit were material. In other words, we determine whether there would be probable cause for arrest even without the falsehoods. "'[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" *Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)).

Even without the excised identification, we conclude there was probable cause for Gilbert's arrest. A phone registered to Gilbert was used repeatedly to make drug deals. The police had no reason to believe that the person using the phone was someone other than the person to whom it was registered. Additionally, Gilbert had prior arrests for the type of criminal activity the police believed he was presently engaging in. *See United States v. Artez*, 389 F.3d 1106, 1114 (10th Cir. 2004) ("[C]riminal history, combined with other factors, can support a finding of reasonable suspicion or probable cause."). Accordingly, we will affirm.

### B. Unreasonable Search

The Badillos contend the search of their home violated the Fourth Amendment because

9

the officers destroyed property during the search.[7] The Badillos allege that the initial search of their home uncovered no evidence. A police officer became irate and threatened to "destroy" the house unless Gilbert told him where the drugs and money were. The police then conducted a second search of the home, in which they "caus[ed] extensive property damage," by "destroying furniture and punching holes in walls."

"The general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of [a] warrant." *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (citation omitted). "[O]fficers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258 (1979). But "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful . . . ." *Ramirez*, 523 U.S. at 71.

The Badillos have failed to allege what pieces of furniture were damaged, the nature of the damage, or the extent of the damage. The allegations are too vague to support a conclusion that the officers acted unreasonably. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . ."). We therefore will affirm as to this claim.

IV.

We will affirm the judgment of the District Court.

---

[7] The Badillos argue in their reply brief that the court abused its discretion when it denied them leave to amend as to this claim because the court did not even mention this claim in its opinion. But the First Amended Complaint added no new facts with respect to this claim and the Badillos did not argue they should be given leave to amend as to this claim. Rather, the motion for leave to amend pertained exclusively to the claim for false arrest. Accordingly, we see no abuse of discretion.